576 So.2d 1243 (1991)
Alfred FOLK
v.
STATE of Mississippi.
No. 90-KA-0093.
Supreme Court of Mississippi.
February 20, 1991.
William M. Frisbie, Greenville, for appellant.
Mike C. Moore, Atty. Gen., Deirdre McCrory, Sp. Asst. Atty. Gen., Jackson, for appellee.
*1244 Before HAWKINS, P.J., and ROBERTSON and BANKS, JJ.
ROBERTSON, Justice, for the Court:

I.
This appeal of a capital rape conviction features the difficulties our increasingly under-staffed and under-funded trial courts and prosecuting officials have in affording accuseds their right to a speedy trial. We surmount that hurdle, only to encounter a second going to the integrity of the jury system and arising in the unusual context of the trial court's removal of a juror two hours after the jury had retired and begun its deliberations. On this latter point, we reverse and remand for a new trial.

II.
Around midnight on August 6-7, 1988, twelve-year-old Linda Simmons[1] had been at her cousin's house on Eureka Street in Greenville, Mississippi. Linda and four of her cousins, two boys and two girls, left and walked to a store to get some popcorn. As they were walking back to the cousin's home, a man drove up and stopped his car beside them and said they had stolen some tools or something from his house. All denied the charge, but the man grabbed Linda by the arm and shoved her into his car, telling the others that he was taking her to the police station. Instead, the man drove Linda to a deserted park and brutally raped her at knife point.
On September 29, 1988, the grand jury of Washington County returned a two-count indictment formally charging Alfred Folk, first, with kidnapping Linda, see Miss. Code Ann. § 97-3-53 (Supp. 1988), and, second, with raping her. See Miss. Code Ann. § 97-3-65(1) (Supp. 1988). On November 2, 1988, Folk appeared in Circuit Court for arraignment and entered a plea of not guilty to each charge. Seven days later, Folk filed in the Circuit Court "Demand for a Speedy Jury Trial" and asked, "in default of such trial, that he be fully acquitted and discharged for said trial."
The case then lapsed into formal silence. Eight months later the Court ordered trial set for July 20, 1989, but when that day arrived, the Court continued the case. It appears that the case was rescheduled for September 15, at which point in time the Court ordered another continuance.
On October 16, 1989, the case was finally called for trial, only to find the Circuit Court ordering a mistrial because of "tainted identification" testimony. After this false start, the Circuit Court called the case again on November 20, 1989, and on the following day the jury returned a split verdict. First, the jury found Alfred Folk not guilty of kidnapping and upon that charge he stands finally discharged. On the other hand, the jury found Folk guilty of capital rape of Linda Simmons, upon which the Circuit Court sentenced him to life imprisonment in the custody of the Mississippi Department of Corrections. Miss. Code Ann. § 97-3-65(1) (Supp. 1988).
Folk now appeals from this conviction and sentence.

III.
Folk first argues that his conviction must be reversed on grounds he was denied his statutory right to a speedy trial. Folk refers to our familiar 270 day rule, first enacted in 1976, which reads:
Unless good cause be shown, and a continuance duly granted by the court, all offenses for which indictments are presented to the court shall be tried no later than two hundred seventy (270) days after the accused has been arraigned.
Miss. Code Ann. § 99-17-1 (Supp. 1990).
All agree the statutory speedy trial clock began to tick on November 2, 1988, the date of Folk's arraignment. He was not, in fact, brought to trial until October 16, 1989  some 349 days later. Folk accepts responsibility for 21 days of this delay  August 31 to September 21, 1989  but says this still leaves the state not affording him *1245 a trial until 328 days after arraignment. By reason of all of this, Folk says we must order that he now be finally discharged.
The problem of delays in the processing and prosecution of criminal charges has plagued this nation for many years. Society, as well as the accused, suffer when indictments lie idle on the docket. Constitutional speedy trial guarantees, so elastic in their language and judicially encrusted balancing tests,[2] are difficult of principled and effective enforcement. In the late 1960's and early 1970's, the several states began adopting specific, fixed cut-off dates within which criminal cases must be brought to trial. In the wake of this nationwide activity, our legislature enacted the 270 day rule, one of the more lenient in the country.[3]
Our 270 day rule is in form and nature not unlike a statute of limitations. It reflects a societal imperative for prompt trials. Beyond this the rule confers a right upon the accused which he may claim no matter how inconvenient society may otherwise deem it. Moore v. State, 556 So.2d 1031 (Miss. 1990); In re Brown, 478 So.2d 1033, 1036 (Miss. 1985). The right is entailed by the provision that the statute may be tolled upon good cause shown and a continuance duly granted by the Court. Our cases recognize various causes as "good cause." Continuances granted to the defendant stop the clock. Vickery v. State, 535 So.2d 1371, 1376 (Miss. 1988). Under certain circumstances, this Court has recognized "good cause" for the delay has existed when trial court dockets are congested. Williamson v. State, 512 So.2d *1246 868, 876 (Miss. 1987). Agreed continuances do not count, either. Arnett v. State, 532 So.2d 1003, 1010 (Miss. 1988). Today, as always, the question is whether, sitting in our appellate capacity, we may find enough of the delay over 270 days good-cause-justified, so that the clock has not expired.
The Circuit Court originally set this case for trial on July 20, 1989  261 days after arraignment. All concede that the 270 day clock had theretofore been running without interruption. On that date  July 20, 1989  the Circuit Court entered an order continuing the case. The Court found as a "fact that another cause previously set on the trial docket was tried on the day this cause was set," and cited this as the cause for the continuance. The record reflects that the Circuit Court had begun the trial of a criminal prosecution against one Anthony Winder on Wednesday, July 19, and that the Winder case had continued over into Thursday, "bumping" the Folk trial. This is "good cause" within Section 99-17-1, tolling the ticking of the speedy trial time clock.
All of this transpired during the July, 1989, term of the Circuit Court of Washington County. That term began on Monday, July 3, and was scheduled to run through Friday, August 25, 1989. We have searched the record for evidence that there may have been other dates later within the term when the case could have been tried. What we find is less than conclusive. What does appear is Folk's motion, filed July 28, 1989, arguing that the 270 day clock had expired and asking that the prosecution be dismissed. On August 15, the Circuit Court denied the motion, finding conclusorily that the prosecution had "shown good cause for its failure to bring this cause to trial within 270 days of arraignment." By way of contrast with the July 20 order, this one fails to identify the factual predicate for the good cause finding.
There is no further record of activity during the July, 1989, term of court. On August 31, 1989, Folk moved for a continuance, reciting that a principal witness in the case had undergone back surgery and was hospitalized in Memphis. On the same day the Court ordered the case continued and reset it for trial on Thursday, September 21, 1989, a day in the second week of the September, 1989, term. When that date arrived, the parties agreed[4] orally to set the case over to Monday, October 16, 1989, when Folk's first trial began, only to end in a mistrial. See Arnett v. State, 532 So.2d 1003, 1010 (Miss. 1988).
Following the mistrial of October 16, Folk renewed his motion to dismiss. The Circuit Court reviewed the course of proceedings reiterated above and on November 17, 1989, held
... that the facts clearly establish beyond any doubt whatsoever good cause for Alfred Folk not being brought to trial within the 270 days.
Because we have in the past, see Nations v. State, 481 So.2d 760, 762 (Miss. 1985), we will accept this finding for purposes of this case. We are disturbed that the record is not nearly so positive as the Circuit Court's sweeping and conclusory findings would suggest.
Going back to July 20, we certainly recognize, as a matter of common sense and good practice, when a case is "bumped," it cannot necessarily be rescheduled the next day. This case involved two out-of-town expert witnesses associated with the FBI Crime Laboratory in Washington, D.C. Such witnesses keep busy schedules and can seldom appear on a moment's notice. All of this occurs within a setting in which we judicially know that the Circuit Court of *1247 Washington County has an extremely busy docket. Rule 201(b), (c), and (e), Miss.R.Ev.
On the other hand, where the speedy trial clock had but nine days before it expired, we find it disturbing to encounter orders like those of August 15 and November 17, which merely find "good cause" but provide not a clue in the way of specifics just what the Court considered that cause to have been. We regard it settled that the prosecution "bears the risk of non-persuasion on the good cause issue." Vickery v. State, 535 So.2d 1371, 1375 (Miss. 1988); Reed v. State, 506 So.2d 277, 281 (Miss. 1987); Nations v. State, 481 So.2d 760, 761 (Miss. 1985); Turner v. State, 383 So.2d 489, 491 (Miss. 1980). From this it follows that the clock ticks where the record is silent regarding the reason for delay. The question is, what quality record the prosecution must tender that the clock be tolled.
A finding of good cause is a finding of ultimate fact. We should treat a good cause finding in such an order the same way we treat any other findings of ultimate fact challenged on appeal; that is, we will leave the finding undisturbed only where there is in the record substantial, credible evidence from which it may fairly have been made. See, e.g., Pinkney v. State, 538 So.2d 329, 342-43 (Miss. 1988); Ponthieux v. State, 532 So.2d 1239, 1244 (Miss. 1988); Yarborough v. State, 514 So.2d 1215, 1220 (Miss. 1987); Mississippi State Highway Commission v. Wood, 487 So.2d 798, 802 (Miss. 1986); and particularly Gavin v. State, 473 So.2d 952, 955 (Miss. 1985). On the other hand, where there is a complete absence of probative evidence in the record, we will ordinarily reverse. Leatherwood v. State, 539 So.2d 1378, 1381, 1387 (Miss. 1989); Wood v. Wood, 495 So.2d 503, 505 (Miss. 1986); Teague v. Brown, 199 Miss. 262, 269, 24 So.2d 726, 729 (1946).
We are satisfied that the clock did not tick after August 31. Good cause existed for the delay thereafter, in the form of Folk's request for the continuance and the subsequent agreement for another continuance. Good cause, as well, existed for the July 20 continuance and for a reasonable time thereafter. The problem is that the term continued until August 25. Following the July 20 continuance, the prosecution was obliged to obtain a new trial setting as soon thereafter as was reasonably practicable, and, failing that, the clock  with but nine days to run  resumed its course. The Circuit Court has given us conclusory findings that good cause existed. This finding implies that it was not feasible to try the case at any time during the month of August. A heavy dose of judicial knowledge is required to sustain this finding, but under the facts and circumstances of this case, we think such knowledge is justified. See Rule 201, Miss. R.Ev.
We hold that the present record shows no violation of Folk's rights under the 270 day rule.

IV.

A.
Folk next argues that the Circuit Court erred when, some two hours after the jury had begun deliberations, it excused a juror and called up an alternate juror who had been previously discharged. The Attorney General, with commendable candor, confesses the error and concedes reversal is required. Because of the importance of the point, we treat it fully.
After the jury had retired, the Court called the two alternate jurors to the bench and stated
We selected you as alternate jurors in case one of the first twelve selected has a problem  an illness, or a family emergency, or has to leave for some reason  that has not occurred so I'm now able to finally discharge you from any further responsibility in the case. We're very grateful for your service as alternate jurors. The Clerk will mail you a check for your service in the case. You're free to go. You may remain here in the courtroom and wait on the verdict if you would like, or you're free to go.
[Emphasis added] The record is silent what the two alternate jurors did at this point.
*1248 Some fifty minutes into deliberations, the jury sent out a note regarding a piece of evidence. The Court replied without objection by either party. An hour and twenty minutes into deliberations, the jury sent another note saying:
Serious notation: One juror is basing her decisions on her feelings and not evidence, and then an arrow pointing toward the word "religious."
The Court submitted a written reply:
"Your verdicts"  plural  "in this case must be based on the evidence and the law. Please retain this and return it to the bailiff."
Folk then moved for a mistrial based upon the last note's contents. The Court denied the motion, and correctly so. See Wright v. State, 512 So.2d 679, 681 (Miss. 1987).
Approximately thirty-five minutes later, the jury sent a note indicating that it could not reach a verdict. The Court had the jurors brought into the courtroom, where the following occurred:
BY THE COURT: Ladies and gentlemen, I have received your most recent communication in which you indicate that you cannot at this time make a unanimous decision on either charge.
I had earlier received a message unsigned indicating one juror was basing his or her decision on religious feelings rather than the evidence. I'd like to know who sent that message to me. Which juror sent the message that 
BY MRS. DORSEY: I did.
BY THE COURT: You did, Mrs. Dorsey. Pardon?
BY MRS. DORSEY: It was from everyone.
BY THE COURT: That was from everyone. All right, which juror were you talking about?
BY MRS. DORSEY: Isabelle.
BY THE COURT: And what religious  what does religion have to do with 
BY MRS. ISABELLE WILSON: Not anything. I told them, I say, I get my religion from God. I still don't believe he's guilty.
BY THE COURT: Well, what did her religious beliefs have to do with this, if someone can answer? Mrs. Dorsey?
BY MRS. DORSEY: Well, she just said 
BY THE COURT: Not exactly what she said, but what part religion or her feelings had to do with this.
BY MRS. DORSEY: Well, now, these are her words. She said that she prayed about it and that kind of like in essence the Lord has said, you know, he's not guilty to her.
BY THE COURT: All right, ladies and gentlemen, I'm sorry if you feel put upon, but we've spent [a] considerable amount of time in presenting the case to you. I'm going to ask all of you to re-examine your own views, and if you become convinced your view is erroneous, then you should change it, not for the purpose simply of coming in with a verdict or because of the opinions of the fellow jurors. But I'm going to ask you to continue to deliberate further and see if you cannot reach a unanimous agreement with respect to one or both charges. If you would like, at this time we can order some food and 
BY MRS. DORSEY: May I make a statement?
BY THE COURT: Yes.
.....
BY MRS. DORSEY: Isabelle has said to us plainly, "You can say what you want. I'm not going to change."
BY MRS. ISABELLE WILSON: And I'm not. I don't feel he's guilty.
BY THE COURT: I understand, but are you willing to consider the views of your fellow jurors?
BY MRS. ISABELLE WILSON: They got their mind and I got mine.
BY THE COURT: Well, have you considered their views in the case?
BY MRS. ISABELLE WILSON: Well, you can let them have the decision, but I haven't  I'm not gonna change my mind.
BY THE COURT: Have you considered the views of your fellow jurors?

*1249 BY MRS. ISABELLE WILSON: No. I don't know what you mean about that. Views, like what?
BY THE COURT: All right, Mrs. Wilson, if you're not going to consider the views of your fellow jurors in reaching a verdict in this case, then you're quite obviously are [sic] going to refuse to follow the Court's instructions. I'm going to remove you from the jury and that brings up Mr. Boyd. [The first alternate juror]
BY MRS. ISABELLE WILSON: Okay.
BY THE COURT: Mr. Boyd, would you please take her place. I'm going to ask the jury to return and continue your deliberations.
.....
[The jury returned to the jury room.]
Folk strenuously objected to this course of proceedings, arguing that the alternate juror, Boyd, had been discharged, had not been sequestered, and for the preceding two hours had been sitting in the courtroom and talking with people. Folk's counsel moved for a mistrial. The Circuit Court denied the motion. In due course, the jury, as reconstituted, returned its verdict finding Folk guilty of capital rape.

B.
The issue has two dimensions: (1) the propriety of the Court's interrogation of juror Wilson two hours into the jury's deliberation and ultimately its action in excusing juror Wilson, and (2) the seating of alternate juror Boyd who had been discharged and had remained in the courtroom without sequestration or instructions. The Attorney General's concession of error addresses only the second dimension. We are more concerned with the first.
Our law provides a process whereby, prior to trial, the court and counsel may examine prospective jurors regarding their competency and fitness. Except in rare cases, a juror once seated and sworn is on the case for the duration. Those rare occasions include two prescribed by statute. Miss. Code Ann. § 13-5-67 (1972) reflects the court's authority to remove a seated juror who becomes "unable" or "disqualified" to perform his or her duties. The statute contemplates such removal "prior to the time the jury retires to consider its verdict."
We normally think of inability to perform as referring to a juror's physical and mental abilities. A juror who became ill or otherwise incapacitated in the course of trial would be "unable" to perform his or her duties within the statute. An emergency in the juror's family during the course of trial might render the juror unable to perform. Disqualification, by way of contrast, refers to the juror's legal eligibility to serve. If, for example, the Court, during the course of trial, discovered that a seated juror was a convicted felon or lived in Arkansas, the Court could excuse that juror. The court may, as well, excuse a juror where, after the trial has begun, it is discovered the juror did not truthfully answer questions on voir dire that went to possible challenges for cause. Myers v. State, 565 So.2d 554, 558 (Miss. 1990); Walls v. State, 371 So.2d 411, 413 (Miss. 1979); Odom v. State, 355 So.2d 1381, 1383 (Miss. 1978).
The jury performs a judicial function, finding the facts and applying the law thereto. It does so by constitutional command. The Court and counsel may, at the outset, interrogate prospective jurors and may test their understanding of their duty to decide the case according to the law and the facts and their resolve to discharge that duty. The Court may order the jury sworn to this end. See Miss. Code Ann. § 13-5-73 (1972).[5] The court may and should (and in this case, repeatedly did) instruct the jury that it decide the case according to the law and the facts. The court may and should include among those instructions one directing the jurors to consider and reflect upon the views of their *1250 fellow jurors. See Banks v. State, 394 So.2d 875, 877 (Miss. 1981). But absent disqualification, disability, fraud or corruption, that is it.
We have no precedent for a circuit court interrupting a jury in the course of deliberations to hear a complaint by one juror that another is refusing to follow the court's instructions. The law shields each juror from mid-deliberation interrogation the same as a judge contemplating a case, and with good reason. A juror may not be questioned after trial so as to impeach a verdict, save only in the case where "extraneous prejudicial information was improperly brought to the jury's attention or ... any outside influence was improperly brought to bear upon any juror." Rule 606(b), Miss.R.Ev.; see also, Capler v. State, 237 So.2d 445, 451-52 (Miss. 1970) and cases cited therein. Neither the court nor counsel could inquire whether a juror misinterpreted the court's instructions, Farmers Co-op Elev. Assn. v. Strand, 382 F.2d 224, 230 (8th Cir.1967), nor may a verdict be impeached "by evidence of the thought processes and undisclosed subjective prejudices of individual jurors." United States v. Eagle, 539 F.2d 1166, 1169-71 (8th Cir.1976). Under this rule neither the court nor counsel could engage in post-verdict interrogation whether a juror followed the instructions of the court.[6] It follows on principle that mid-deliberation interrogation is pretermitted as well.
Legal imperative commands that jurors be encouraged to act freely and forthrightly in the jury room. We accept that
[t]he viability of the system depends upon their being able to vote without fear that later they will be cross-examined or called to justify their actions.
Salter v. Watkins, 513 So.2d 569, 571 (Miss. 1987). If our trial courts had mid-deliberation power to call jurors to account and cross-examine them regarding the course of deliberations, we could anticipate a substantial chilling effect on juror candor and courage.
There are cynics among us who have long suspected many jurors do not read  much less follow  the instructions of the court. The law answers the cynics with a presumption that the jury follows the instructions, see, e.g., Atwood v. Lever, 274 So.2d 146, 148 (Miss. 1973); Johnson v. Richardson, 234 Miss. 849, 859, 108 So.2d 194, 198 (1959). This presumption is not nearly so much grounded in empirical proof as in the institutional imperative that we accept that jurors are fair-minded and conscientious and will do the duty the constitution devolves upon them. For this reason, where the court correctly instructs the jury, we will ordinarily reverse only where the evidence is legally insufficient or the verdict is against the overwhelming weight of the evidence. We can think of no neutral principle that would allow what was done here as an exception to this general presumption without opening the door to mid-deliberation interrogation of jurors anytime anyone suspects the court's instructions are not being followed.
We are particularly troubled at the Court's interrogation of juror Wilson. The Court put the question whether juror Wilson was willing to consider the "views" of her fellow jurors. Juror Wilson answered, "No. I don't know what you mean about that. Views, like what?" The answer suggests juror Wilson did not understand the Court's question. Concededly, the question was simply put, but if the juror's meager education and understanding be the problem, the Court and counsel had a duty to discover that fact before she was ever seated.
In Sharplin v. State, 330 So.2d 591 (Miss. 1976), we addressed the question of the circuit court's authority and responsibility when a jury reports  after relatively brief deliberations  that it is deadlocked. In Sharplin we set forth a model instruction intended and perceived as a non-coercive reminder to the jurors of their duties under the law and of their responsibilities *1251 to the parties and their community.[7] Over the past fifteen years we have repeatedly approved Sharplin's course. See, e.g., Wheeler v. State, 536 So.2d 1347, 1353 (Miss. 1988). More to the point, we have repeatedly reversed where our circuit courts have practiced verdict coercion in excess of that allowed in Sharplin. See, e.g., Edlin v. State, 523 So.2d 42, 43-46 (Miss. 1988); Gearlson v. State, 482 So.2d 1141, 1143 (Miss. 1986); Isom v. State, 481 So.2d 820, 822-24 (Miss. 1985); Murphy v. State, 426 So.2d 786, 790-91 (Miss. 1983).
It is common knowledge that jurors carefully attend the trial judge's every action. His position of authority, respect and neutrality give him peculiar power to influence. Sheldon v. Puckett, 483 So.2d 354, 357 (Miss. 1986); Martin v. State, 415 So.2d 706, 708 (Miss. 1982). The principle is settled that he do nothing that would favor one party or the other or intimate a view how the case ought be decided. Thompson v. State, 468 So.2d 852, 854 (Miss. 1985); Merchants Company v. Hutchinson, 186 So.2d 760, 764 (Miss. 1966). In the case at bar, the circuit judge, in the presence of the entire jury, inquired of juror Wilson whether she would consider the views of her fellow jurors but made no comparable specific inquest whether the other jurors would consider juror Wilson's views. The judge's conduct and remarks, as set forth in the course of proceedings noted above, almost certainly conveyed to one or more of the jurors who remained the substantial impression that the judge desired a guilty verdict. Sharplin charts a far safer course where such circumstances arise.

C.
We turn next to alternate juror Boyd's eligibility for recall after he had been finally discharged. We begin with Miss. Code Ann. § 13-5-67 (1972), which provides in pertinent part:
... Alternate jurors in the order in which they are called shall replace jurors who, prior to the time the jury retires to consider its verdict, become unable or disqualified to perform their duties ... An alternate juror who does not replace a regular juror shall be discharged at the time the jury retires to consider its verdict.

(Emphasis added) In Luster v. State, 515 So.2d 1177 (Miss. 1987), we said
... that alternate jurors are to be discharged in accord with the statute and are not to be present or participate in deliberations under any circumstances not prescribed by statute.
Luster, 515 So.2d at 1180. In that case the Court had instructed the alternate jurors to go back into the jury room during deliberations and listen so they would be able to fill in if a regular juror had to be dismissed. This Court held this improper but in the circumstances found no prejudice and affirmed. In other cases where a regular juror is found disqualified, this Court has approved substitution of an alternate juror where this is done before the jury retires to begin deliberations. Myers v. State, 565 So.2d 554 (Miss. 1990); Shaw v. State, 540 So.2d 26 (Miss. 1989).
In the case sub judice, the substitution was made after the alternate jurors had been dismissed from jury service and after the jury had been in deliberations for almost two hours. More importantly, the *1252 Court made the substitution after juror Boyd had been finally discharged without sequestration or instructions. In this the Circuit Court erred.

D.
We hold that the Circuit Court erred when it (a) interrogated juror Wilson regarding her course of deliberations in the case, and (b) when it removed juror Wilson from the jury. We further hold that the Circuit Court erred when it seated alternate juror Boyd who had been neither sequestered nor instructed regarding the case for the period beginning when the jury retired and until he was placed on the jury panel. We reverse the judgment that Alfred Folk is guilty of capital rape and remand the case to the Circuit Court of Washington County for a new trial on all issues arising out of the capital rape count in the indictment.
REVERSED AND REMANDED.
ROY NOBLE LEE, C.J., DAN M. LEE, P.J., and PRATHER, SULLIVAN, PITTMAN, BANKS and McRAE, JJ., concur.
HAWKINS, P.J., concurs with separate written opinion joined by DAN M. LEE, P.J., and McRAE, J.
HAWKINS, Presiding Justice, concurring:
I concur in the reversal of this case for the reasons stated.
I also concur that Miss. Code Ann. § 99-17-1 (Supp. 1990), the 270-day statute, was not violated.
DAN M. LEE, P.J., and McRAE, J., join this opinion.
NOTES
[1] "Linda Simmons" is a fictitious name, for obvious reasons.
[2] See Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972) and its federal and state progeny.
[3] Ala. Const. Art. I § 6 (not greater than six to nine months from arrest); Alaska Crim.R.Ct. 45 (120 days from date of charge, arrest or initial arraignment); Ariz.Crim.R.P. 8.2 (120 days from initial appearance or 90 days from arraignment, whichever is lesser, if held in custody; 120 days from date of initial appearance or 90 days from arraignment, whichever is greater, if released from custody); Ark.R.Crim.P. 28.1 (12 months from filing of charge, or if held in custody or on bail for the charged offense, then from date of arrest); Cal.Pen.Code § 1382 (within 60 days after indictment or information); Colo.R.Crim.P. 48(b) (6 months from the entry of a not guilty plea on issues in indictment or information); Conn. Gen. Stat.Rev. § 54-82c (1989) (120 days from request of disposition if incarcerated); D.C.Sup.Ct.R.Crim.P. 48 (1990) (9 months from date when charged); Fla.R. Crim.P. 3.191 (1989 & Supp. 1990) (175 days from indictment); Idaho Code Ann. § 19-3501 (1987) (6 months after arrest if not indicted; 6 months after indictment filed); Ill. Ann. Stat. ch. 38 para. 103-5 (Smith-Hurd 1980) (120 days from custody); Ind.R.Crim.P. 4 (6 months from charge or arrest); Iowa R.Crim.P. 27 (1991) (one year after arraignment); Kan. Stat. Ann. § 22-3402 (1988) (90 days after arraignment if jailed; 180 days after arraignment if held on appearance bond); Ky.Rev.Stat. 500.110 (1990) (180 days after request if imprisoned); La.Code Crim.P.Ann. Arts. 578-82 (West 1981) (capital cases, three years from date of institution of prosecution; other felonies two years from date of institution of prosecution); Mass. Gen. Laws Ann. Ch. 277, §§ 72-73 (1980) (6 months after indictment); Mont. Code Ann. §§ 46-13-201, 202 (1989) (6 months from complaint, information or indictment if misdemeanor); Neb. Rev. Stat. § 29-1207 (1987) (6 months from date indictment returned or information filed); Nev. Rev.Stat. § 174.511 (1987) (state, upon demand has right to trial of defendant within 60 days after arraignment); N.M.R.Crim.P. 5-604 (1986) (6 months after arraignment); N.Y.Crim.Law § 30.30(1)(a) (McKinney 1981) (6 months within commencement of action); N.C. Gen. Stat. § 15A-701(a)(1) (1990) (120 days from date of arrest, service of criminal process, waiver of indictment, or indictment, whichever occurs last); Ohio Rev. Code Ann. §§ 2945.71-73 (1987) (270 days after arrest); Ore.Rev.Stat. §§ 135.747, 135.760, 135.763 (1989) (indictment or information brought within 30 days after held to answer, upon request of prisoner within 90 days); Pa.R.Crim.P. 1100 (1989) (180 days from complaint if incarcerated; 365 days from complaint if on bail); R.I. Gen. Laws Ann. § 12-13-7 (Supp. 1990) (6 months after pleading to indictment or information); S.D.Cod.Laws Ann. § 23A-44-5.1 (1988) (180 days from date of first appearance before judicial officer on complaint of indictment); Tex.Code Crim.Art. 32A.02 (1989) (180 days after accused of felony); Utah Code Ann. § 77-1-6(f), (h) (1990) (admitted to bail or entitled to trial within 30 days after arraignment if unable to post bail); Va. Code Ann. § 19.2-243 (1990) (5 months from date probable cause found if held in custody); Vt.R. Crim.R. 48 (Supp. 1990) (must be brought to trial within such time as Supreme Court provides by administrative order); Wash.Super.Ct. Crim.R. 3.3 (1989) (60 days from arraignment if not released from jail pending trial; 90 days if released from jail); Wis. Stat. Ann. § 971.10 (1985) (90 days from date of written demand, demand may not be made until after filing of information or indictment).
[4] At the hearing held on Folk's renewal of his motion to dismiss, the Assistant District Attorney stated to the Court, in the presence of defense counsel, "We agreed to another setting on Alfred [Folk], which was to have begun on  started on a Monday, October 16, and it's from that setting the mistrial occurred...." Defense counsel was present and responded but in no way took issue with the statement of an agreement for a continuance from September 21 to October 16. In his brief on appeal, defense counsel denies that there was any such agreement. While we wish the record were clearer, we think it fair to treat defense counsel's silence in the presence of the prosecuting attorney's representation as an admission.
[5] The juror's oath is prescribed by statute.

§ 13-5-73. Oath of jurors and bailiffs in capital cases.
The jurors in a capital case shall be sworn to "well and truly try the issue between the state and the prisoner, and a true verdict give according to the evidence and the law... ."
[6] Miss.R.Ev. 606(b); Mueller, Jurors' Impeachment of Verdicts and Indictments in Federal Court Under Rule 606(b), 57 Neb.L.Rev. 920, 936 n. 63 & 64 (1978) (and cases cited therein).
[7] know that it is possible for honest men and women to have honest different opinions about the facts of a case, but, if it is possible to reconcile your differences of opinion and decide this case, then you should do so.
Accordingly, I remind you that the court originally instructed you that the verdict of the jury must represent the considered judgment of each juror. It is your duty as jurors to consult with one another and to deliberate in view of reaching agreement if you can do so without violence to your individual judgment. Each of you must decide the case for yourself, but only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion if you are convinced it is erroneous, but do not surrender your honest convictions as to the weight or effect of the evidence solely because of the opinion of your fellow jurors or for the mere purpose of returning a verdict. Please continue your deliberations.[2]
[2] The instruction is in accord with Dixon v. State, 306 So.2d 302 (Miss. 1975) and Section 5.4 ABA Standards for Criminal Justice. See also, Mississippi Model Jury Instructions Nos. C.08 and C19, pp. 12, 22 (1977).