THOMAS, J.,
for the Court:
¶ 1. John Marcus Frazier appeals his conviction of sale of hydromorphone and conviction as an habitual offender, raising the following issues as error:
I. THE TRIAL COURT ERRED BY FAILING TO GRANT DEFENDANT’S MOTION TO DISMISS FOR FAILURE TO PROVIDE A SPEEDY TRIAL.
II. THE TRIAL COURT ERRED BY ALLOWING THE PROSECUTION *445 TO INTRODUCE EVIDENCE OF A PRIOR BAD ACT OF THE DEFENDANT.
III. THE TRIAL COURT ERRED BY REFUSING TO GIVE DEFENSE INSTRUCTION D-9, A LESSER INCLUDED OFFENSE INSTRUCTION.
¶ 2. Finding error, we reverse and remand.
FACTS
¶ 3. Mike Russell with the Jackson Police Department was working as an undercover drug agent when he met Frazier on November 17, 1994. Russell had a confidential informant working for him named Jerry Farrell. Russell and Farrell went to a home in Jackson, Mississippi where they met Frazier. Russell testified that Frazier told him on November 17, 1994 that, “he was going to make some doctors the next day and that he would owe me a pill which would be Dilaudid.... And he would make it up to me.” On November 18, 1994, Frazier flagged 'Russell down when he was traveling down a street. Russell pulled into some apartments and Frazier pulled in beside him. Russell approached Frazier’s car and Frazier handed him two Dilaudid. Thereafter, Russell asked Frazier how much he was asking for more pills and Frazier replied, “Thirty-five apiece.” Russell asked for two more and Frazier obliged.
¶ 4. After the State rested, Frazier testified on his own behalf. He described his extensive history with testicular cancer and his addiction to and use of various drugs, both before and during his battle with cancer. Frazier’s cancer was in remission at the time of trial.
¶ 5. Frazier testified that he was friends with Farrell a long time before the incident, but had parted company. Frazier saw Farrell on November 17, 1994 at a gas station in Jackson. Frazier was in a great deal of pain that day due to moving some furniture and because of his cancerous condition. He used the pay telephone at that station to call his doctor and make an appointment for the next day. Frazier believed that Farrell overheard his conversation on the telephone. Farrell loaned Frazier $40 which Frazier agreed to pay back the next day at the same gas station. Frazier went to the emergency room, where he received a shot of Morphine and Morphine tablets for his pain.
¶6. On November 18, 1994, Frazier went to his regular doctor who gave him a prescription of Dilaudid and Xanax. After filling these prescriptions, Frazier went to the same gas station. Farrell did not arrive at the designated time, so Frazier left. While driving Frazier saw Farrell and a man he testified he had never seen before. The two vehicles pulled into the parking lot of some apartments. Farrell walked over the Frazier’s vehicle. Frazier testified that he gave Farrell the $40 he owed him. When Frazier tried to leave, Farrell asked him if he had “gotten anything from the doctor.” Frazier then handed Farrell four Dilaudid pills. He testified that Farrell did not give him any money in exchange. Frazier denied selling the pills to Russell and meeting Russell the previous day and telling him he was going to “make a doctor.”
¶ 7. The jury believed the State’s version of events and found Frazier guilty.
ANALYSIS
I.
THE TRIAL COURT ERRED BY FAILING TO GRANT DEFENDANT’S MOTION TO DISMISS FOR FAILURE TO PROVIDE A SPEEDY TRIAL.
¶ 8. Frazier argues that his right to a speedy trial was denied in two ways, first a violation of his statutory right to a speedy trial under Miss. Code Ann. § 99-17-1 (Rev.1994), and a violation of his constitutional right to a speedy trial as provided in the Sixth Amendment of the United *446 States Constitution and in Article 3, Section 24 and 26 of the Mississippi Constitution.
¶ 9. Mississippi Code Annotated § 99-17-1 reads as follows, “Unless good cause be shown, and a continuance duly granted by the court, all offenses for which indictments are presented to the court shall be tried no later than two hundred seventy (270) days after the accused has been arraigned.” Where the accused is not tried within 270 days of his arraignment, the State has the burden of establishing good cause for the delay since the accused is under no duty to bring himself to trial. Nations v. State, 481 So.2d 760, 761 (Miss.1985). Continuances for “good cause” toll the running of the 270-day period, unless “the record is silent regarding the reason for the delay,” and then “the clock ticks against the State because the State bears the risk of non-persuasion on the good cause issue.” Vickery v. State, 535 So.2d 1371, 1375 (Miss.1988). The State has the burden of establishing “good cause” for delays; however, this does not mean that expressions of cause need to be made contemporaneously with the delay. McGee v. State, 608 So.2d 1129, 1133 (Miss.1992). “[P]ost-delay determinations of cause are permissible and, when supported by substantial credible evidence, shall not be overturned.” Hull v. State, 687 So.2d 708, 729 (Miss.1996) (citing McNeal v. State, 617 So.2d 999, 1007 (Miss.1993)). There are several events that toll the running of the statute, including plea negotiations, motions for continuances, and congested court dockets. Winder v. State, 640 So.2d 893, 894-95 (Miss.1994).
¶ 10. Frazier was arraigned on May 31, 1996 and tried on November 18, 1997, a total of 536 days elapsed between arraignment and trial. (The year 1996 was a leap year). On August 15, 1996, Frazier was released on his own recognizance for the purpose of receiving medical treatment. From May 31, 1996 until August 15, 1996 a total of 75 days ran against the State. The clock started running again on January 9, 1997 when Frazier was returned to jail. Trial was set on May 15, 1997, but because of new appointment of counsel he requested a continuance. From January 9, 1997 until May 9, 1997 a total of 119 days ran against the State. Trial was set for July 14, 1997, but was not tried. The court papers are completely void of any explanation of why Frazier was not tried until November 18, 1997. From July 14, 1997 until November 18, 1997 a total of 126 days ran against the State. Therefore, a total of 320 days ran against the State, well over the statutory maximum of 270.
¶ 11. There is nothing in the court papers explaining the delay after the first trial setting of July 14, 1997, although both the defense and the State mention that the delay was partially attributed to crowded dockets. Crowded dockets are considered “good cause” under Miss.Code Ann. § 99-17-1, however, a crowded docket will not automatically suffice to establish good cause. McGee v. State, 608 So.2d 1129, 1132 (Miss.1992). “[U]pon the proper showing by the State in response to a defendant’s timely motion for dismissal because of an alleged 270 day violation, docket congestion can be a proper basis for good cause when supported by the facts of the particular case.” Walton v. State, 678 So.2d 645, 648 (Miss.1996). The State bears the burden of positively demonstrating that the backlog actually caused the delay. Id. Post-delay determinations of good cause are permissible. McGee, 608 So.2d at 1133; Barnes v. State, 577 So.2d 840, 844 (Miss.1991).
¶ 12. In Walton, there were no specific orders of continuances for crowded dockets found in the record. Id. Nevertheless, the trial judge found on the record that the case could not be tried due to crowded dockets and “that although a specific order of continuance from term to term has not been entered in this case, that the Minutes of the court reflect that ‘all matters not disposed of during the term are continued to the next term of court.’ ” Id. Also, the *447 record showed that “[t]here were twenty (20) other cases set for trial along with Walton on August 28, 1989.... Walton’s fourth trial setting included eight (8) other cases which were all subject to trial according to the trial judge.” Id. at 649. In response to Walton’s 270 issue in his motion for new trial, the State had produced a report showing a heavy trial caseload. Id.
¶ 13. “A finding of good cause is a finding of ultimate fact. We should treat a good cause finding in such an order the same way we treat any other findings of ultimate fact challenged on appeal; that is, we will leave the finding undisturbed only where there is in the record substantial, credible evidence from which it may fairly have been made.” Folk v. State, 576 So.2d 1243, 1247 (Miss.1991) (citations omitted). “On the other hand, where there is a complete absence of probative evidence in the record, we will ordinarily reverse.” Id. (citations omitted).
¶ 14. Prior to Frazier’s trial on November 17, 1997, the trial court held a hearing on Frazier’s motion to dismiss for violation of the 270 day rule and failure to provide a speedy trial. The prosecution mentioned that the delay was partly due to an overcrowded docket. When the trial judge denied Frazier’s motion, he did not find that the delay was due to overcrowded dockets. There are no continuances on the record with regard to the overcrowded docket, nor is there any evidentiary basis, such as the docket calendars, in the record as in Walton. Therefore, in this case there is “a complete absence of probative evidence in the record.” Folk, 576 So.2d at 1247. The total delay from Frazier’s arraignment to trial was 320 days.
¶ 15. There is another hurdle a defendant must make before his 270 day argument can be considered meritorious. In Walton, the Court found that a defendant must raise the speedy trial issue within the time frame prescribed by the statute. Id. at 649-50. “ ‘[I]n the absence of an affirmative request or demand for trial it will be presumed that defendant acquiesced in the delay.’ ” Id. at 649-50 (quoting State v. Davis, 382 So.2d 1095, 1098 (Miss.1980)). The Court found that ‘Walton waived his right to complain about not being tried within 270 days, because he neither requested nor asserted his right to a speedy trial or objected to a delay and prejudice has not been shown by Walton.” Walton, 678 So.2d at 650.
¶ 16. Here Frazier filed a motion to dismiss his indictment for failure to provide him a speedy trial on July 8, 1996. This was well within the 270 day period.
¶ 17. Last but not least, the Mississippi Supreme Court has found that a defendant must show prejudice before a dismissal with prejudice is required. Kolberg v. State, 704 So.2d 1307, 1318 (Miss.1997).
We hold that dismissal with prejudice is not required by the statute unless the state upon the finding of a violation fails to persuade the court that the violation did not prejudice the defendant’s ability to defend against the charge and that the state did not deliberately engage in oppressive conduct.
Id. (quoting State v. Harrison, 648 So.2d 66, 71 (Miss.1994)). The Court found that the proper remedy in such a situation was dismissal without prejudice to reindict and remand the case to the trial court for a hearing to determine “ ‘whether [the defendant] has been prejudiced by the delay incurred prior to dismissal and whether the state in delaying trial was deliberately engaging in oppressive conduct.’ ” Kolberg, 704 So.2d at 1318 (quoting Harrison, 648 So.2d at 71). There was clearly a 270 day violation in this case; however, Frazier has not alleged prejudice to his defense. We reverse and remand this case to the trial court for a hearing to determine whether Frazier was prejudiced by the delay. Upon remand if the trial court finds prejudice, the court should dismiss with prejudice. Dismissal with prejudice, however, is not required by the statute *448 unless the State upon the finding of a violation fails to persuade the court that the violation did not prejudice Frazier’s ability to defend against the charge and that the State did not deliberately engage in oppressive conduct. If the court is so persuaded the remedy shall be dismissal without prejudice to reindict.
¶ 18. THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT IS REVERSED AND REMANDED FOR PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED AGAINST HINDS COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, COLEMAN, DIAZ, IRVING, LEE, AND PAYNE, JJ., CONCUR.