741 So.2d 1049 (1999)
Marshall RHYNE, a/k/a Marshall Adolphus Rhyne, Appellant.
v.
STATE of Mississippi, Appellee.
No. 98-KA-00416-COA.
Court of Appeals of Mississippi.
July 20, 1999.
*1051 Martin M. Oden, Attorney for Appellant.
Jeffrey A. Klingfuss, Jackson, Attorney for Appellee.
BEFORE SOUTHWICK, P.J., BRIDGES, AND IRVING, JJ.
SOUTHWICK, P.J., for the court:
¶ 1. Marshall Rhyne appeals his conviction in Lauderdale County Circuit Court on the charge of grand larceny. He asserts that his rights to a speedy trial were violated. Rhyne also alleges that the trial judge reversibly demonstrated partiality to the State when he asked if the prosecutor wanted to enter certain items into evidence. We find no reversible error and affirm.

FACTS
¶ 2. The evidence supported the State's theory that Marshall Rhyne and an accomplice, Laura Newsom, were involved in a classic "pigeon drop" scheme. In the early afternoon of December 18, 1996, Mamie Dell Brown was at the Trustmark National Bank in Meridian when she was approached by a man, later identified as Rhyne, who claimed to be looking for a certain address. Brown did not know the location. Then Rhyne suggested that they approach a different woman, later shown to be Newsom, and ask her about the address. The woman said she did know the address. The three then went to Brown's car and discussed the matter.
¶ 3. During this conversation Rhyne informed both women that he had inherited $100,000, but could not return to his country with it or he would be arrested. It was therefore his desire to see that the money was given to charity. Brown said the man was going to give her $70,000 and $30,000 to Newsom to disperse to charity. Before Rhyne would give Brown the money though, he wanted Brown to show him some of her money as a sign of good faith.
¶ 4. Brown went to her bank and got a certificate of deposit worth over $5,000. The trio then went to a different bank where Newsom ostensibly went inside to get her money, though Brown could not actually see her enter the bank from where they were parked. The woman returned and handed Rhyne an envelope. He suggested they pray over it and then returned it to her. All three returned to Brown's bank were she cashed her CD and then handed the money to Rhyne. He prayed about it, wrapped it in a handkerchief, and returned it to Brown telling her to hold it close to her heart and not open it until she got home. Apparently a switch in the money had been made.
¶ 5. Rhyne asked Brown to take him to Jackson. She could not but Newsom agreed to go with him to the Jackson airport. Brown assisted them in obtaining a taxi. Brown began to drive away and looked in the handkerchief. She discovered that what she thought was money was in fact cutup newspaper. Brown stopped her car and approached the stationary cab. She grabbed Rhyne but he broke free and got away. Brown then grabbed Newsom who also broke free. Newsom headed towards a mall with Brown in close pursuit. Brown caught up with her and a struggle occurred. Losing her coat and Newsom, Brown managed to obtain Newsom's purse.
¶ 6. Brown went to the police and made a report. Less than an hour later, she was informed that a woman had arrived claiming to be her friend and wanting to return Brown's coat. Brown identified the woman. The police investigation resulted in the arrest of Rhyne as well two or three days later.

DISCUSSION

Issue 1: Statutory speedy trial
¶ 7. Rhyne alleges a violation of his statutory right to a speedy trial. The statute provides that unless "good cause be shown, and a continuance duly granted by the court, all offenses for which indictments are presented to the court shall be tried no *1052 later than two hundred seventy (270) days after the accused has been arraigned." Miss.Code Ann. § 99-17-1 (Rev.1994).
¶ 8. Arraignment was on April 7, 1997. The statutory obligation to try within 270 days began to run from that date. An order was entered on August 21, 1997, resetting the case until November 19, 1997. This order stated that the defense counsel asked that the case not be tried at the first setting. The November 19 setting was addressed by a motion filed by the State on December 29 in which it was alleged that the case had been "passed on the docket for [the] good cause" of the State's conducting another trial. On January 2, 1998, an order was entered that reset the case for January 28, 1998. The order however stated that the case was continued from November 19 because of "ongoing plea negotiations" even though the State's motion had argued that good cause existed because of a trial conflict for the State beginning on the November 19 date.
¶ 9. At a hearing to consider the speedy trial arguments, the circuit judge found that the 136 days from April 7 until August 21 was part of the total to be considered for the length of the delay, but that the period from August 21 until November 19 was irrelevant because of the continuance duly entered. He then determined that the period from November 19 until the trial a little over two months later should not be included in the computation of delay because it was necessary for the good cause of another trial being held. Only 136 days were relevant to the statutory speedy trial right.
¶ 10. Rhyne accurately identifies the rule that a mere recitation in an order that there is good cause to grant a continuance is not sufficient to prove good cause. Herring v. State, 691 So.2d 948, 953 (Miss. 1997); Vickery v. State, 535 So.2d 1371, 1375 (Miss.1988). A court must inquire into the actual reasons for granting a continuance. Herring, 691 So.2d at 953.
¶ 11. The first extension order reflected that delay was desired by both the State and the defense. Rhyne denies this but presented no evidence aside from his claim. The second extension order presents some complexity. The order on its face granted a continuance due to ongoing plea negotiations, when the State had actually requested the postponement because of a trial conflict. This is of no import since the court at the hearing found that the actual reason for the second delay was because the State was involved in another trial. Stating the wrong reason in a court order for a continuance does not prevent a court from determining that good cause actually existed. In Herring what was said in an order did not prevent fact-finding as to whether in fact good cause existed. Here, what was said in the order and the different basis on which the order allegedly was actually sought were both good cause. Folk v. State, 576 So.2d 1243, 1246 (Miss.1991) (State trying another case on the same day); Winder v. State, 640 So.2d 893 (Miss.1994) (plea negotiations).
¶ 12. The prosecutor stated at the speedy trial hearing that a conflict arose from trials of two other named defendants when Rhyne's second trial date arrived. Rhyne maintains that the State should have been required to show why it chose to try those two before trying him. Suitable explanations in Rhyne's view would include that the other defendants "were indicted by an earlier grand jury, had a significantly older cause number, had been incarcerated longer, had demanded speedy trial, etc." That is too limited an approach. It was sufficient for the State to demonstrate that it was involved in other trials. Folk, 576 So.2d at 1246. Perhaps had the defense presented evidence that some part of the basis for the State's selecting the other cases for trial was bad faith in delaying his, there would have been an issue to consider. We do not find that disproving the possibility of bad faith in this instance to be part of the State's burden.
*1053 ¶ 13. "A finding of good cause is a finding of ultimate fact." Id. at 1247. Such a finding will not be reversed where there is "substantial, credible evidence" to support it. Id. The State's involvement in other trials met this burden.

Issue 2: Constitutional speedy trial right
¶ 14. Rhyne asserts a violation of his federal and state constitutional rights to speedy trial. The analysis for federal speedy trial rights was announced in Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). We must examine 1) the length of the delay, 2) the reason for the delay, 3) whether the accused asserted his right to a speedy trial, and 4) prejudice to the accused. Id. at 530, 92 S.Ct. 2182. None of these elements, by itself, is dispositive. Id. at 533, 92 S.Ct. 2182. The same analysis applies to Rhyne's state constitutional speedy trial rights, and we will consider them together. Skaggs v. State, 676 So.2d 897, 900 (Miss.1996).
¶ 15. The constitutional right to a speedy trial attaches at the time of arrest or other effective accusation of a crime. Prejudice will be presumed when the delay from arrest until trial is at least eight months. Id. The delay in Rhyne's trial exceeded eight months. Therefore the trial judge properly reviewed the Barker factors.
¶ 16. The second consideration is the reason for the delay. The court explained that the delay period from arrest on December 27, 1996 until arraignment on April 7, 1997 was because the first grand jury to meet after the date of the crime was in March 1997. Absent a waiver of indictment by the defendant, Rhyne could not be tried until the grand jury indicted him. Miss. Const. art. 3 § 27 (Supp.1997). The judge then referred to his previous analysis under Rhyne's statutory speedy trial rights. The period from April until the first continuance in August 1997 was simple delay in bringing Rhyne to trial. From August until trial the following January, an agreed continuance and then a conflict with other trials were the explanations.
¶ 17. Rhyne claims that he never agreed to a continuance. The order granting the first continuance refers to defense counsel not wishing to try the case on the first setting. The trial judge at the hearing on the speedy trial motion chose to accept that account. As to the second continuance, that continuance was given because of a trial conflict despite the incorrect reference to plea negotiations which has been previously discussed. Rhyne's agreement or lack thereof would not prevent that reason from being good cause.
¶ 18. Rhyne explains some mathematics for the benefit of the court in an attempt to show that even if the first continuance were valid, there was still pretrial detention in excess of eight months. This is an incorrect merger of the statutory analysis and the constitutional one. The important matter for presuming prejudice under Barker is the number of calendar days that have passed since arrest and before trial. If that period is more than eight months, and December 1996 until January 1998 is more than eight months, prejudice is presumed, and the court must address the three other factors.
¶ 19. Under the third Barker factor, the judge found that no prejudice to the defendant was shown. Rhyne notes that mere incarceration can prejudice a defendant. Barker, 407 U.S. at 534, 92 S.Ct. 2182. While this is true, the United States Supreme Court also held that the prejudice against the defendant resulting from a ten month incarceration was minimal under the facts of that case. Id. The Court found no allegation that witnesses had died or had for some other reason become unavailable as a result of the delays. Id. Neither does Rhyne offer an example of prejudice against himself. Any prejudice resulting against Rhyne by virtue of his incarceration itself, we find not to weigh heavily here. Therefore the presumption of prejudice arising from the delay greater than eight months does not weigh strongly *1054 in Rhyne's favor since no actual prejudice bolsters the presumption.
¶ 20. Finally, the judge found that Rhyne first documented in writing his request for a speedy trial on about November 26, 1997, which was approximately two months before his trial. However, that was not a demand for a trial but instead a motion to dismiss for failure to try. A motion to dismiss for a speedy trial violation does not constitute a demand for a speedy trial. Brewer v. State, 725 So.2d 106, 118 (Miss.1998). Regardless, the motion was filed only two months before trial. Thus the demand is of little benefit to Rhyne's argument.
¶ 21. Rhyne argues that there was an earlier demand. He insists that on the original trial date of July 23, 1997, he asked for a speedy trial. The trial court found that no such demand occurred on that date. Such fact finding needs to be supported by evidence both substantial and credible. Folk, 576 So.2d at 1247. Here, the judge's decision is not so much supported by the evidence as Rhyne's claim is lacking in any evidence aside from his own assertion.
¶ 22. Reviewing each of these factors, we find none to weigh strongly on the side of finding a constitutional violation. The fairly short delay beyond eight months, Rhyne's agreement to a significant portion of the delay, the failure to demand trial, and the absence of prejudice lead to our agreement that no violation occurred.

Issue 3: Trial judge's alleged partiality
¶ 23. Rhyne claims that the judge prompted the State to introduce certain items into evidence and that this manifested a preference for the State. The issue is procedurally barred due to the lack of a contemporaneous objection at trial. Johns v. State, 592 So.2d 86, 89-90 (Miss.1991).
¶ 24. What Rhyne is referencing is the testimony of a police officer who had searched Rhyne's house. Discovered were such items as a relevant bank deposit slip, a joint account checkbook for Rhyne and his purported accomplice, Newsom, cut-up newspaper similar to what was given the victim, and the victim's name and telephone number on a slip of paper. When the prosecutor finished his questioning, he tendered the witness. The trial judge then asked: "Are you offering these items that you just identified into evidence?" The prosecutor answered that he was.
¶ 25. The trial judge's action did in a minor way benefit the State. We consider the action only of minor benefit to the State because the damaging testimony about all of this evidence had already been admitted and was fully usable in jury deliberations even if the physical evidence were not made exhibits. Moreover, it was within the trial judge's subsequent discretion to permit the State to reopen its case, recall a witness, or otherwise permit the documents to be introduced later. Smith v. State, 646 So.2d 538, 544 (Miss.1994). Thus the judge's asking whether the physical evidence was to be admitted at that time may well have done nothing more than avoid the disruptions of letting the evidence in later. Within the bounds of impartiality, the trial court has discretion to advance the orderly consideration of the case.
¶ 26. We find no impropriety in what occurred even had the issue not been waived.
¶ 27. THE JUDGMENT OF THE CIRCUIT COURT OF LAUDERDALE COUNTY OF CONVICTION OF GRAND LARCENY AND SENTENCE AS A HABITUAL OFFENDER TO FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND FINE OF $1,000.00 IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO LAUDERDALE COUNTY.
McMILLIN, C.J., KING, P.J., BRIDGES, DIAZ, IRVING, LEE, PAYNE, AND THOMAS, JJ., CONCUR.
MOORE, J., NOT PARTICIPATING.