IN THE SUPREME COURT OF MISSISSIPPI
NO. 93-KA-01183-SCT

*RICO HERRING*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/08/93 |
| TRIAL JUDGE: | HON. GEORGE C. CARLSON JR. |
| COURT FROM WHICH APPEALED: | PANOLA COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | DAVID L. WALKER |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY:  JOLENE M. LOWRY |
| DISTRICT ATTORNEY: | N/A |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 2/13/97 |
| MOTION FOR REHEARING FILED: | 2/19/97 |
| MANDATE ISSUED: | 5/5/97 |

**BEFORE PRATHER, P.J., PITTMAN AND McRAE, JJ.**

**PITTMAN, PRESIDING JUSTICE, FOR THE COURT:**

¶1. On October 1, 1990, Rico Herring was indicted by the grand jury of Panola County, Mississippi on three counts: one count of conspiracy to sell a controlled substance in violation § 97-1-1(a) of the Miss. Code Ann., and two counts of sale of a controlled substance in violation of § 41-29-139(a)(1) of the Miss. Code Ann. Herring's case was transferred from Panola County Youth Court to the Circuit Court of Panola County. Herring had a jury trial on October 4 and 5, 1993. He was found guilty on all counts. The circuit court judge sentenced Herring to serve twenty (20) years on the conspiracy count and thirty (30) years each on the two counts of sale of a controlled substance. All sentences were to run consecutively. Aggrieved by the decision of the court below, Herring perfected this appeal and assigns the following as error:

> **I. WHETHER THE CIRCUIT COURT JUDGE ERRED IN DENYING HERRING'S MOTION FOR A SPEEDY TRIAL.**

> **II. WHETHER THE CIRCUIT COURT JUDGE ERRED IN DENYING HERRING'S MOTION TO SUPPRESS HIS STATEMENT TAKEN ON JUNE 1, 1990.**

**III. WHETHER THE VERDICT OF THE JURY OF GUILTY ON ALL COUNTS OF THE INDICTMENT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.**

**IV. WHETHER THE CIRCUIT COURT'S SENTENCE OF TWENTY YEARS ON COUNT ONE, THIRTY YEARS ON COUNT TWO, AND THIRTY YEARS ON COUNT THREE TO BE SERVED CONSECUTIVE TO EACH OTHER IS CRUEL AND UNUSUAL PUNISHMENT IN VIOLATION OF THE EIGHT AMENDMENT TO THE UNITED STATES CONSTITUTION.**

¶2. After a careful review of the record and briefs in this case, we find that all assignments of error are without merit and thus, the lower court should be affirmed.

## STATEMENT OF FACTS

¶3. David Bryan, Sheriff of Panola County, testified on behalf of the State that on or about May 31, 1990, he learned that crack cocaine was being sold at the Lester Street Apartments in Batesville, Mississippi. At this time, Bryan hired Michael Diggs as an undercover informant for operations in Panola County. He also contacted the Water Valley Police Department to arrange for one of its officers, James Wright, to help with the under cover operation. The Batesville Police Department and the Mississippi Bureau of Narcotics (MBN) were also notified.

¶4. On May 31, 1990, Diggs was sent to the Lester Street Apartments in Batesville with a surveillance team to make a purchase of drugs. Diggs was fitted with a body transmitter and searched and Bryan gave him forty dollars ($40) in two twenty (20) dollar bills with which to make the buy. The serial numbers on the bills had been recorded to aid in tracking of the location of the funds. After Diggs bought the drugs, he returned to the station and gave Bryan two rocks of crack cocaine. Bryan turned over the rocks of crack cocaine to the MBN so that the rocks could be submitted to the Mississippi Crime Lab for testing.

¶5. On June 1, 1990, another purchase was planned by Bryan, Diggs and Wright. Based upon the information that they had previous to this day, they prepared a search warrant for the apartment and sent Diggs and Wright with another surveillance team in an effort to make a purchase and subsequent arrest. Again body transmitters were used. After the purchase of cocaine was made on June 1, Wright signaled to the other officers over his transmitter with a preset signal that a successful buy had been completed. At this time, the other officers converged upon the scene and four arrests were made. Herring was among the four who were arrested. The other three persons were Casey Childs, Sammy Childs, and Lavell Draper.[1] All of these people are related by blood; second cousins and an uncle.

¶6. Casey, Herring's second cousin, testified that he is the second cousin of Lavell Draper and a brother to Sammy. At trial, Casey testified that he would get crack cocaine rocks from Sammy, sell them, and give the money to Sammy. Casey was arrested and taken into custody on June 1, 1990, at which time he gave a statement to Bryan. In that statement, Casey told Bryan that Herring gave him rocks to sell and that he sold $365 worth and gave the money to Herring. Casey stated that he probably told Bryan that, but that he was confused, scared, and did not remember. Again, at trial, Casey testified that he got the crack cocaine from Sammy. Further, Casey stated that sometimes Herring was around when Sammy would give him the crack cocaine and sometimes he was not.

Bryan took the stand again and testified to the statement made by Casey at the station. At that time, Casey's story was that Herring gave Casey crack cocaine, Casey sold it and gave the $365 to Herring.

¶7. Diggs testified that in 1990 he worked for the City of Batesville and was involved in undercover investigations for Bryan. Diggs stated that on May 31, 1990, he went to 117-G at the Lester Street Apartments where he contacted a black male known as "Ricardo." In court, Diggs identified Herring as the black male called "Ricardo." Diggs testified that Herring and Draper were inside the apartment and that he asked for Sammy. After being told that Sammy was not there, the two men asked what Diggs wanted. He replied "two," meaning two rocks of crack cocaine. He then received two rocks from Herring. Diggs then gave Herring the two twenty-dollar bills which had been given to him by Bryan. Diggs returned to the station with Bryan to make a report.

¶8. The next morning, June 1, Diggs returned to the apartment. Herring, Draper and Sammy were there. Diggs testified that the three were "cooking up" crack cocaine and that he told them he would probably be back when he got paid. Diggs then went to Bryan and informed him of his visit to the apartment. At this time, Bryan contacted Wright to help with an undercover operation. Wright and Diggs met with Bryan and several other law enforcement officers to discuss the procedure to be followed. Both men were searched and Wright was fitted with a body transmitter and was given eighty dollars ($80) by Agent Rod Waller of the MBN. Diggs and Wright were then sent back to apartment 117-G of the Lester Street Apartments where they approached Sammy, Draper and Herring who were standing in front of the apartment building. Diggs testified that he and Wright approached Herring and Diggs told him that Wright wanted "two." At that time, Herring told Draper that it was okay to sell to Wright and Diggs, and Draper began to deal right there in the open. Wright told them that they should not deal right out in front of the building and asked Draper if they could go around the corner. When the group walked to the side of the building, Diggs looked back and saw Herring pass Draper two rocks of crack cocaine, which Draper in turn gave to Wright. Wright negotiated a price of thirty-five dollars ($35) rather than forty dollars ($40) for the cocaine, so Draper returned with some change. At that time, Bryan and the other officers came and arrested Draper, Sammy, Casey, and Herring.

¶9. Wright, a police officer with the Water Valley Police Department, testified that he was a member of the United States Marine Corps Reserve and had served in the Persian Conflict for six months. He also stated that he was contacted by Bryan personally and that Bryan requested his assistance in an undercover drug operation in Batesville, Mississippi. Wright's version of the events was substantially similar to that of Diggs, and Wright also identified Herring as the man who passed the cocaine to Draper for sale. He further added that he saw Herring clearly and very clearly saw Herring pass two rocks of crack cocaine to Draper.

¶10. Rod Waller, currently a special agent with the Drug Enforcement Agency, testified that during May and June of 1990 he was working with the MBN in Panola County. He stated that after the buy was over on May 31, 1990, Bryan turned the crack cocaine over to him to keep until they could be delivered to the crime lab. Agent Waller delivered the substance to the crime lab and checked them out for trial. The substance was introduced into evidence as Exhibit Seven. Agent Waller further testified that the money used in the May 31 operation was recovered from Herring's possession upon his arrest. At the time Herring was arrested, he was in possession of $2,475 that he acknowledged at the time as being his own. Agent Waller also testified that at the time Herring was unemployed.

Along with the two rocks of crack cocaine from the May 31 buy, Agent Waller received two rocks of crack cocaine from Wright as a result of the June 1 buy. These rocks of crack cocaine were introduced into evidence as Exhibit Ten. The two twenty-dollar ($20) bills which were given to Wright for the June 1, 1990, purchase were recovered from Draper, who acknowledged that they were his.

¶11. Teresia Hickmon, a forensic scientist with the Mississippi Crime Laboratory, testified that Exhibits Seven and Ten contained crack cocaine. Jason Crestman, deputy sheriff of the Panola County Sheriff's Department, testified that on June 1, 1990, he searched the person of Herring, who he identified in court. He found in Herring's shoes, somewhere between two thousand four hundred ($2400) and two thousand five hundred ($2500) dollars.

¶12. Herring took the stand and testified in his own defense. He stated that on May 31, 1990, he was not present at the Lester Street Apartments, but was in Sardis at his great-grandmother's home. Herring admits being present on June 1, 1990, but stated that he did not hand anything to Draper and that everyone who testified as to his involvement was lying and making it up. The large amount of money on his person at the time of arrest, Herring said, was money given to him to "hold" by Sammy. Herring testified that he was not advised of his *Miranda* rights. He avowed that the alleged statement is not what he told Bryan and that Bryan made him sign it. Herring concluded by stating that everyone who had testified was part of a scheme to frame him.

¶13. Again, Bryan was recalled to the stand. He stated that he interviewed Herring at the Panola county Sheriff's office after his arrest on June 1, 1990. Bryan testified that he advised Herring of his *Miranda* rights. It was Bryan's testimony that Herring waived his rights and gave a statement.

## DISCUSSION OF LAW

### I. WHETHER THE CIRCUIT COURT JUDGE ERRED IN DENYING HERRING'S MOTION FOR A SPEEDY TRIAL.

¶14. Herring contends that the circuit court judge erred in denying his motion to dismiss for failure to provide Herring with a speedy trial. Herring asserts that both his statutory and constitutional rights to a speedy trial were violated. First, we will address the issue of the statutory right to a speedy trial.

### A. Statutory Right to a Speedy Trial

¶15. Section 99-17-1 of the Miss. Code Ann. provides the defendant with a statutory right to a speedy trial. It reads as follows:

**Indictments to be tried within 270 days of arraignment.**

Unless good cause be shown, and a continuance duly granted by the court, all offenses for which indictments are presented to the court shall be tried no later than two hundred seventy (270) days after the accused has been arraigned.

Miss. Code Ann. § 99-17-1 (Rev. ed. 1994).

¶16. Where the accused is not tried within 270 days of his arraignment, the State has the burden of

establishing good cause for the delay since the accused is under no duty to bring himself to trial. *Nations v. State*, 481 So. 2d 760 (Miss. 1985). Continuances for "good cause" toll the running of the 270-day period, unless "the record is silent regarding the reason for the delay," and then "the clock ticks against the Sate because the State bears the risk of non-persuasion on the good cause issue." *Vickery v. State*, 535 So. 2d 1371, 1375 (Miss. 1985). This Court has held that a written order reciting that a motion for continuance is well taken and should be granted is the equivalent to judicial determination that good cause exists and has been shown for the continuance. *Nations v. State*, 481 So. 2d 760 (Miss. 1985). However, we later said that a continuance which merely states that it has been granted "for good cause" is not sufficient to bear the burden of showing that the continuance was in fact granted for good cause. *Vickery v. State*, 535 So. 2d 1371, 1375 (Miss. 1988). Thus, the Court should look to why the continuance was granted. This Court in the past has recognized congested dockets as good cause. *Polk v. State*, 576 So. 2d 1243 (Miss. 1991) (bumping of defendant's trial occasioned by continuance of another criminal prosecution constituted "good cause" within the speedy trial statute, tolling ticking of the speedy trial time clock); and *Williamson v. State*, 512 So. 2d 868 (Miss. 1987). Continuances that are attributed to the defendant stop the running of the clock and are deducted from the total number of days before trial. *Vickery*, 535 So. 2d at 1376.

¶17. Herring waived arraignment on November 28, 1990, and was tried October 4, 1993. This time period is a total of one thousand forty-three (1043) days between arraignment and trial. Seven hundred seventy-three (773) days must be accounted for in order to assure that Herring's statutory right to a speedy trial was not violated. The following is a list of pertinent dates and timetable.

| DATE | EVENT | Delay Following the Event |
|---|---|---|
| | Statutory Speedy Trial Time Table | |
| 11/28/90 | Waiver of Arraignment. Order setting trial for April 1, 1991. | 113 |
| 3/20/91 | Notice to Court and Defendants -- State Witness is unavailable. | 12 |
| 4/1/91 | No trial occurred; Herring was not cooperating with his attorney. Hearing took place; Mr. Scott, court-appointed counsel, said he had never even seen Herring, as he had not shown up for his appoint-ments. Herring admitted that from 12/90 until 4/1/91 he made no effort to locate his lawyer or contact him in any way. | 22 |
| 4/23/91 | Order of Continuance entered. Herring says because State's material witness unavailable. State says because Herring needed time to consult with his attorney. Trial reset for 4/25/91. | 2 |

| | | |
|---|---|---|
| 4/25/91 | No Trial Occurred. Wright (State's witness) was serving on active duty in the Persian Gulf conflict. Therefore, the case was set for the next term of court -- 10/14/91. Bond was also set. | 4 |
| 4/29/91 | Herring posted bond and went back to Tennessee. | 168 |
| 10/14/91 | No trial occurred. Herring failed to appear. Judgment Nisi was entered against him and his bondsman. | 211 |
| 5/12/92 | Order entered setting trial for 6/22/92. | 41 |
| 6/22/92 | No Trial occurred; the case was bumped so that State v. Versie Scott could be heard. | 7 |
| 6/29/92 | Order entered against the bondsman and notification was given to the police that Herring was a fugitive from justice. He was arrested in Memphis, TN, and then refused to sign waiver of extradition information along with the other documents which needed to be executed for extradition. | 5 |
| 7/3/92 | Order entered setting trial for 12/7/92 | 157 |
| 12/7/92 | No trial occurred. Herring was not in court. | 156 |
| 5/12/93 | Governor Fordice executed a request for interstate rendition. Herring fought that extradition. On 6/26/93 Herring was returned to Mississippi. Next available date for trial was 10/4/93. | 41 |
| 6/22/93 | Order substituting Attorney David L. Walker for Attorney Paul R. Scott. | 36 |
| 7/28/93 | Order setting trial for 10/4/93 entered. | 68 |
| 10/4/93 | Trial began. | 0 |
| | **TOTAL NUMBER OF DAYS ELAPSED** | **1043** |

¶18. We must note that not one order of continuance or order to set the trial date is included in the Clerk's Papers. However, both parties seem to pretty much agree on the dates, and therefore, the timetable was taken from the briefs of the parties.

¶19. In the present case, Herring seems to have caused the delay because he fled the jurisdiction and fought extradition. The one hundred twenty-five (125) days that elapsed between the date of arraignment and the first trial date may be said to count against the State. The twenty-two (22) days between the original trial date and the order setting a new date are counted against the defendant. He would not cooperate with his attorney. The two (2) days between the order and the second trial date also count against the defendant for the same reason. The next four (4) days should not count against the State because its material witness was serving in the Persian Gulf Conflict. On April 29, 1991, Herring posted bond and left the jurisdiction of Mississippi and went to Tennessee. From this point on, Herring fought extradition back to Mississippi and thus, the time should be counted against him and not the State. Seven hundred eighty-six (786) days elapse from the time Herring left the State until the time he returned to the jurisdiction of the court below. Trial was set immediately for

October 4, 1993. The one hundred four (104) days from his return to trial cannot be counted against the State because thirty-six (36) were to allow his new attorney time to prepare and October 4, 1993, was the earliest trial date possible. Thus, the total amount of days that may be counted against the State is one hundred twenty-five (125), well within the two hundred seventy (270) day limit.

¶20. A defendant should not be allowed to control the justice system to his advantage. Here is a prime example of a defendant who did not want to go to trial, but after causing as much a delay as possible requests his case be dismissed. Thus, Herring's statutory right to a speedy trial was not violated. Any delay over the one hundred twenty-five (125) days in the beginning is attributable to the defendant.

## B. Constitutional Right to a Speedy Trial

¶21. The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI. Herring asserts that his constitutional right to a speedy trial was violated. *See Barker v. Wingo*, 407 U.S. 514 (1972). With respect to the Constitutional right, the time began to run from the date of indictment versus the date of arraignment. Herring was indicted on October 1, 1990. This is fifty-eight (58) days prior to his arraignment. Adding that time onto the previous table, the time elapsed between the indictment and trial is one thousand one hundred one (1101) days and the amount that counts against the State for purposes of the Constitutional issue is one hundred eighty-three (183) days.

¶22. The United States Supreme Court provided the standard of review for a denial of the constitutional right to a speedy trial in *Barker v. Wingo*, 407 U.S. 514 (1972). We must look to the length of the delay, the reason for the delay, whether the defendant asserted his right, and whether the defendant was prejudiced by the delay. We adhere to this Constitutional test as stated by the United States Supreme Court and will apply the *Barker* factors to the present case in order to determine if there has been a violation of the defendant's Sixth Amendment right to a speedy trial.

¶23. The weighing of the *Barker* factors is not a mechanistic weighing. We must look at the totality of the circumstances. The familiar *Barker* factors in the analysis of a speedy trial as applied to the case *sub judice* are as follows.

### 1. Length of Delay

¶24. The delay in the present case is a total of approximately three years. We have held that a delay of eight months or longer is presumptively prejudicial. *Spencer v. State*, 592 So. 2d 1382, 1387 (Miss. 1991); *Smith v. State*, 550 So. 2d 406 (Miss. 1989). Where there is an extensive delay prior to trial, that delay "must be weighed heavily in favor of [the defendant] in the balancing test." *Flores v. State*, 574 So. 2d 1314, 1322 (Miss. 1990). However, the delay should "not [be] conclusively weighted against the State"; the presumption of prejudicial delay may be rebutted when balanced by the remaining factors. *Wiley v. State*, 582 So. 2d 1008, 1012 (Miss. 1991). This factor weighs in favor of the defendant.

### 2. Reason for the Delay

¶25. We have held that "[o]nce we find the delay presumptively prejudicial, the burden shifts to the prosecutor to produce evidence justifying the delay and to persuade the trier of fact of the legitimacy of the reasons." *State v. Ferguson*, 576 So. 2d 1252, 1254 (Miss. 1991). The State has shown and the lower court found that the overwhelming majority of the delay in the case *sub judice* is due to Herring himself. He fled the jurisdiction, fought extradition, and when he was present he was uncooperative with his attorney. This factor must weigh heavily in favor of the State.

### 3. Defendant's Assertion of His Right

¶26. In this third factor, the *Barker* Court held that

> [t]he defendant's assertion of his speedy trial right, then is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right. We emphasize that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial.

*Barker*, 407 U.S. at 531-32.

¶27. Herring never requested that his trial begin. In fact, he did everything but request a trial. As the United States Supreme Court noted, it is hard to claim denial of a speedy trial when the defendant does nothing to bring his case to trial, but, in fact, does everything to fight it. Thus, this factor weighs heavily against Herring.

### 4. Prejudice to the Defendant

¶28. In a delay as long as the one in the case at bar, the burden again shifts to the State to show that the defense suffered no prejudice by the delay. The United States Supreme Court has noted:

> Inordinate delay, wholly aside from possible prejudice to a defense on the merits, may "seriously" interfere with the defendant's liberty, whether he is free on bail or not and . . . may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family, and friends.

*United States v. Marion*, 404 U.S. 307, 320 (1971); *see also, Flores*, 574 So. 2d at 1323. However, Herring cannot show any prejudice. He was out on bond the majority of the time. At no point did Herring assert that he was prejudiced by failing to locate witnesses after such a long time, or in any other fashion. In fact, Herring admits that "this factor does not weigh as heavily in favor of Appellant, it is not disposititve since all factors must be considered together." Herring suffered no prejudice in the delay before trial. Thus, this factor weighs against Herring and in favor of the State.

¶29. Looking at the totality of the circumstances and the *Barker* factors, Herring's constitutional right to a speedy trial was not violated. Therefore, the lower court was correct in denying the motion to dismiss under both the statutory and constitutional rights to a speedy trial. This assignment of error is without merit and the lower court's decision to deny the motion to dismiss should be affirmed.

**II. WHETHER THE CIRCUIT COURT JUDGE ERRED IN DENYING HERRING'S MOTION TO SUPPRESS HIS STATEMENT TAKEN ON JUNE 1, 1990.**

¶30. Herring contends that the lower court erred in denying his pre-trial motion to suppress the statement taken from him after his arrest. He argues that it was involuntary. "The applicable standard for determining whether a confession is voluntary is whether, taking into consideration the totality of the circumstances, the statement is the product of the accused's free and rational choice." **Porter v. State**, 616 So. 2d 899, 907-8 (Miss. 1993) (citation omitted). Herring concedes that "[i]n determining whether a confession is freely and voluntarily given the circuit court judge sits as a trier of fact," **McCarty v. State**, 554 So. 2d 909, 911 (Miss. 1989), and this Court should not reverse him unless the circuit judge is manifestly wrong. **Balfour v. State**, 598 So. 2d 731, 742 (Miss. 1992) (citations omitted).

¶31. Herring contends that no one read him his rights and that he did not sign the **Miranda** waiver form. He stated that Bryan told him that he would do eighty to ninety years in prison unless he signed the papers (which he didn't sign). Herring does admit that he signed the statement, but not the **Miranda** waiver. Bryan took the stand and testified to the procedure the day of the arrest. He stated that Herring appeared to be awake, sober, alert, and paying attention. Bryan also stated that he was of the opinion that Herring fully understood what was going on. Bryan gave Herring the **Miranda** waiver form and read it to him and he appeared to understand it. At no time did Herring request that an adult be present or that they cease in questioning him. Bryan stated that he had no doubt that the statement was freely and voluntarily given. Waller testified to the same thing. His story was consistent with Bryan's.

¶32. Herring also took the stand at the motion hearing and testified. He stated that he did not sign the waiver form and that he did not sign the statement voluntarily. The prosecutor brought out that Herring had been arrested numerous times before in the past seven years (he was 17 at the time of arrest) for everything from grand larceny to kidnaping to drug charges. Sadly enough, Herring was familiar with the procedures and could not say that he did not understand.

¶33. The judge found that Herring's statement was voluntarily given. He did not believe that Herring did not know what was going on because Herring had been there too many times before. Moreover, the signatures of the papers "signed" by Herring all looked alike. The judge could not believe that one signature was Herring's and the other a forgery. Thus, the circuit court judge was not manifestly wrong in denying the motion to suppress because it was given freely and voluntarily. This assignment of error is without merit.

### III. WHETHER THE VERDICT OF THE JURY OF GUILTY ON ALL COUNTS OF THE INDICTMENT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.

¶34. Herring contends that the jury's verdict was against the overwhelming weight of the evidence. In determining whether a jury verdict is against the overwhelming weight of the evidence, this Court must accept as true the evidence which supports the verdict and will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial. **Thornhill v. State**, 561 So. 2d 1025, 1030 (Miss. 1989), *rehearing denied*, 563 So. 2d 609 (Miss. 1990). Only when the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice will this Court disturb it on appeal. **Benson v. State**, 551 So. 2d 188, 193 (Miss. 1989) (*citing **McFee v. State**, 511 So. 2d 130, 133-134 (Miss. 1984)). Thus, the

scope of review on this issue is limited in that all evidence must be construed in the light most favorable to the verdict. *Mitchell v. State*, 572 So. 2d 865, 967 (Miss. 1990).

¶35. Herring admits that all evidence should be taken in a light most favorable to the State. However, in his argument, he merely points out the inconsistencies between the defense's story and the State's. The facts as described in the section "Statement of Facts" make it clear that there was ample evidence to support the jury verdict. The fact was that it became an issue of credibility. Who do you believe: the sheriff, the undercover agent, the police officer, and the MBN agent, OR the defendant who is fighting for his freedom? The jury determined that the State was telling the truth and not Herring. This Court shall not disturb the findings of the jury unless fair-minded jurors could only find the accused not guilty. *Mitchell*, So. 2d at 867.

¶36. The facts when viewed in a light most favorable to the State prove that Herring did sell two rocks of crack cocaine to Diggs on May 31, 1990, and that he conspired with Draper to sell and did sell two rocks of crack cocaine to Officer Wright on June 1, 1990. We cannot submit that the jury verdict was against the overwhelming weight of the evidence. In fact, the lower court correctly denied the motion for a new trial/j.n.o.v. This Court will not disturb the jury verdict unless it will sanction an unconscionable injustice, something that is just not present in the case at hand. Thus, the lower court should be affirmed.

> **IV. WHETHER THE CIRCUIT COURT'S SENTENCE OF TWENTY YEARS ON COUNT ONE, THIRTY YEARS ON COUNT TWO, AND THIRTY YEARS ON COUNT THREE TO BE SERVED CONSECUTIVE TO EACH OTHER IS CRUEL AND UNUSUAL PUNISHMENT IN VIOLATION OF THE EIGHT AMENDMENT TO THE UNITED STATES CONSTITUTION.**

¶37. Herring concedes that this Court has held that thirty years, the maximum penalty for a sale of a controlled substance under Section 41-29-139 of Miss. Code Ann. is not cruel and unusual punishment, but asserts that the consecutive aspect of this sentence makes it unconstitutional. Herring is correct that this Court has found that thirty years for selling a controlled substance is not cruel and unusual punishment. *See, e.g., Fleming v. State*, 604 So. 2d 280 (Miss. 1992); and *Medley v. State*, 600 So. 2d 957 (Miss. 1992).

¶38. We have never found a maximum penalty in a drug case -- even if the sentences were to run consecutively -- to be cruel and unusual punishment. This Court has held that:

> [W]hen a trial judge imposes a sentence within the prescribed limits of a statute, it will generally be upheld and not regarded as cruel and unusual. *Barnwell v. State*, 567 So. 2d 215, 222 (Miss. 1990); *Whitley v. State*, 511 So. 2d 929, 932 (Miss. 1987). Extended proportionality analysis is not required by the Eighth Amendment for a sentence unless it's a sentence of life in prison without the possibility of parole or a sentence which is manifestly disproportionate to the crime committed. *Barnwell*, 567 So. 2d at 221.

*Hewlett v. State*, 607 So. 2d 1097, 1107 (Miss. 1992). The sentence imposed upon Herring is not disproportionate to the crime committed.

¶39. During the sentencing hearing, the State recommended the maximum sentence on each count of

the indictment and that the sentences should run consecutively. The State cited Herring's extensive juvenile record that began when Herring was ten years old and Herring's complete unwillingness to go to trial and cooperate with his attorneys. Herring also testified and prayed that the court "go light" on him and give him a "second chance." The trial judge in sentencing Herring recited his thoroughness and reasons for the sentences he imposed on Herring. The judge's colloquy spans ten pages in the trial record.

¶40. We have said that thirty years is not cruel and unusual punishment for drug charges and, in light of the defendant's juvenile record, the judge did not err in imposing the sentences consecutively. Thus, this assignment of error is without merit.

## CONCLUSION

¶41. After careful review of the briefs, record and case law, we find all issues are without merit. Thus, the lower court is affirmed in all aspects.

**¶42. COUNT I: CONVICTION OF CONSPIRACY TO SELL COCAINE AND SENTENCE TO TWENTY (20) YEARS IN THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED. COUNT II: CONVICTION OF SALE OF COCAINE AND SENTENCE TO THIRTY (30) YEARS IN THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED; THIS SENTENCE SHALL RUN CONSECUTIVE TO THE SENTENCE IMPOSED IN COUNT I. COUNT III: CONVICTION OF SALE OF COCAINE AND SENTENCE TO SERVE THIRTY (30) YEARS IN THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED; THIS SENTENCE SHALL RUN CONSECUTIVE TO THE SENTENCE IMPOSED IN COUNT II. DEFENDANT SHALL PAY A LAB FEE IN THE AMOUNT OF $200.00 AND ALL COSTS OF COURT. APPELLANT IS GIVEN 176 DAYS CREDIT FOR TIME SERVED WHILE AWAITING TRIAL AS REQUIRED BY LAW.**

**PRATHER, P.J., BANKS, McRAE, ROBERTS, SMITH AND MILLS, JJ., CONCUR. LEE, C.J., AND SULLIVAN, P.J., CONCUR IN RESULT ONLY.**

1. Hereinafter, Casey and Sammy Childs shall be referred to by their first names to avoid confusion.