767 So.2d 1072 (2000)
L.C. GAVIN, Appellant,
v.
STATE of Mississippi, Appellee.
No. 1999-KA-01036-COA.
Court of Appeals of Mississippi.
September 26, 2000.
*1074 Mitchell M. Lundy Jr., Grenada, Attorney for Appellant.
Office of the Attorney General by Billy L. Gore, Attorneys for Appellee.
BEFORE McMILLIN, C.J., IRVING, AND MOORE, JJ.
MOORE, J., for the Court:
¶ 1. L.C. Gavin was convicted in the Grenada County Circuit Court for aggravated assault and sentenced to ten years in the custody and control of the Mississippi Department of Corrections. Aggrieved, he alleges six errors on appeal
I. THE TRIAL COURT ERRED IN FAILING TO GRANT A MISTRAL WHEN THE JURY SENT A NOTE TO THE JUDGE STATING THEY WERE UNABLE TO REACH A VERDICT;
II. THE TRIAL COURT ERRED IN NOT ALLOWING THREE JURORS TO TESTIFY AT THE MOTION FOR NEW TRIAL THAT THEY DID NOT UNDERSTAND THE JUDGE'S INSTRUCTION AND THOUGHT THEY COULD NOT BE A "HUNG JURY" AND HAD TO REACH A UNANIMOUS VERDICT;
III. THE TRIAL COURT ERRED WHEN IT FOUND THE STATE'S CHALLENGES TO BLACK JURORS AS BEING RACE NEUTRAL WHEN CONFRONTED WITH THE BATSON CHALLENGE;
IV. THE TRIAL COURT ERRED WHEN IT FAILED TO QUASH THE JURY PANEL AS IT WAS NOT REFLECTIVE OF THE COUNTY'S RACE MAKE (% OF BLACKS AND WHITES);
V. THE TRIAL COURT ERRED WHEN IT DID NOT ALLOW THE DEFENSE TO QUESTION THE MOTHER OF THE VICTIM ABOUT BERNARD WILLIAMS AND HIS MOTHER OFFERING TO DROP THE CHARGES UPON PAYMENT OF $25,000;
VI. THE TRIAL COURT ERRED IN FAILING TO GRANT A NEW TRIAL IN THIS CASE IN THE INTEREST OF JUSTICE.
Finding no error, we affirm.

FACTS
¶ 2. Bernard Williams attended a bachelor party at L.C.'s Bar and Grill. Williams and Appellant L.C. Gavin wagered $5 on a game of pool. Gavin pulled out a $10 bill from his pocket because he had no smaller bills. Williams pocketed the $10. Gavin won the game, and Williams gave him $5 instead of giving Gavin his $10 back plus the $5 wager. Williams had consumed some alcohol that night and was a little tipsy. Matters became heated when Williams refused to pay the money. At *1075 some point, Gavin drew his knife to protect himself in the event that Williams attacked him with a pool stick. Gavin testified that he must have accidentally cut Williams when Williams dove toward him, but he did not realize that he had actually cut Williams. Gavin's accidental handiwork with the knife yielded a five inch cut on Williams's neck, a nine inch cut from Williams's shoulder to his elbow, and two smaller cuts on Williams's arm. The jury found Gavin guilty of aggravated assault.

LAW AND ANALYSIS

I. DID THE TRIAL COURT ERR IN FAILING TO GRANT A MISTRAL WHEN THE JURY SENT A NOTE TO THE JUDGE STATING THEY WERE UNABLE TO REACH A VERDICT?
¶ 3. After deliberating for one and one-half hours, the jury informed the trial court that it could not reach a unanimous verdict. Gavin moved for a mistrial. The trial court denied the mistrial, but further instructed the jury:
I know that it is possible for honest men and women to have honest different opinions about the facts of a case, but, if it is possible to reconcile your differences of opinion and decide this case, then you should do so.
Accordingly, I remind you that the Court originally instructed you that the verdict of the jury must represent the considered judgment of each juror. It is your duty as jurors to consult with one another and to deliberate in view of reaching an agreement, if you can do so without violence to your individual judgment. Each of you must decide the case for yourself, but only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion if you are convinced that it is erroneous, but do not surrender your honest convictions as to the weight or effect of the evidence solely because of the opinion of your fellow jurors or for the mere purpose of returning a verdict. Please continue your deliberations.
¶ 4. The jury retired for further deliberation and after approximately twenty-five minutes the jury returned a guilty verdict. The trial court polled the jury and each juror acknowledged that he or she agreed with the verdict. Gavin argues that in instructing the jury the trial court did not emphasize that the jurors should not change their votes just to reach a verdict. Thus, Gavin believes the trial court erred in denying his motion for a mistrial.
¶ 5. The above instruction is identical to the instruction approved in Sharplin v. State, 330 So.2d 591, 596, n. 1 (Miss.1976), for circumstances in which the trial judge faces a hung jury. The Sharplin instruction is "a model instruction intended and perceived as a non-coercive reminder to the jurors of their duties under the law and of their responsibilities to the parties and their community." Folk v. State, 576 So.2d 1243, 1250-51 (Miss.1991). The trial court in the case sub judice did precisely what it was supposed to do when confronted with a deadlock after the jury had only deliberated for one and one-half hours. This ground of appeal is without merit.

II. DID THE TRIAL COURT ERR IN NOT ALLOWING THREE JURORS TO TESTIFY AT THE MOTION FOR NEW TRIAL THAT THEY DID NOT UNDERSTAND THE JUDGE'S INSTRUCTION AND THOUGHT THEY COULD NOT BE A HUNG JURY AND HAD TO REACH A UNANIMOUS VERDICT?
¶ 6. Gavin argues that after the verdict was read a juror informed his attorney that three jurors were confused by the Sharplin instruction and thought that they could not go home until they rendered a unanimous verdict. Gavin requested that these jurors testify to their confusion at the hearing on his motion for new trial. The trial court would not allow the jurors to testify.
*1076 ¶ 7. "A juror may not be questioned after trial so as to impeach a verdict, save only in the case where `extraneous prejudicial information was improperly brought to the jury's attention or ... any outside influence was improperly brought to bear upon any juror.'" Folk, 576 So.2d at 1250 (quoting M.R.E. 606(b)). "[N]either the court nor counsel could inquire whether a juror misinterpreted the court's instructions." Id. Further, neither the court nor counsel could ask a juror whether he or she followed the instructions of the court. Id. Gavin does not claim there was extraneous prejudicial information or outside influence. He simply argues that three jurors were confused by the Sharplin instruction. The last sentence of the Sharplin instruction clearly instructs each juror to "not surrender your honest convictions... for the mere purpose of returning a verdict." Even if three jurors were confused by this very simple instruction, the trial court correctly refused to allow interrogation of the jurors in the absence of extraneous prejudicial information or outside influence. This ground of error is without merit.

III. DID THE TRIAL COURT ERR WHEN IT FOUND THE STATE'S CHALLENGES TO BLACK JURORS AS BEING RACE NEUTRAL WHEN CONFRONTED BY THE BATSON CHALLENGE?
¶ 8. The State exercised five of its six peremptory challenges against African Americans. Gavin did not specify which particular jurors were excluded. From the record we are able to ascertain that the State struck the following African American jurors: Gracie Trotter was struck because she was personally acquainted with both the defendant and the victim; Lewis Bridges was struck because he was personally acquainted with Gavin, Gavin's wife, and Gavin's children; Jessie Bowdry was struck because he was a former client of Gavin's lawyer and he was "shifty-looking"; Deloise Wiggins was struck because she had a police record, she was a known alcoholic, and she had several run-ins with police stemming from her drinking problem; and Booker T. Amos was struck because several witnesses knew him personally and he was known as a long-time alcoholic. The trial court made an on-the-record finding that each of the State's reasons were race neutral. During the Batson colloquy, Gavin offered no rebuttal and did not otherwise comment on the State's reasons. On appeal Gavin complains that the reasons given by the State were a "smoke screen" for discrimination.
¶ 9. The trial judge has the sole discretion to determine whether the prosecution's exercise of peremptory challenges was racially motivated under its articulated reasons. Collins v. State, 691 So.2d 918, 926 (Miss.1997) (citing Lockett v. State, 517 So.2d 1346, 1350 (Miss.1987)). "Moreover `a trial judge's factual findings relative to a prosecutor's use of peremptory challenges on minority persons are to be accorded great deference and will not be reversed unless they appear to be clearly erroneous or against the overwhelming weight of the evidence.'" Id.
¶ 10. After reviewing the State's reasons, we cannot say that any one of the challenges was not supported by a legitimate, race-neutral explanation.[1] "Coupled with the fact that our review is made all the more difficult by [Gavin's] failure to offer any evidence whatsoever in rebuttal, we find that this assignment of error fails." Foster v. State, 639 So.2d 1263, 1280 (Miss. 1994).

IV. DID THE TRIAL COURT ERR WHEN IT FAILED TO QUASH THE JURY PANEL AS IT WAS NOT REFLECTIVE OF THE COUNTY'S RACE MAKE (% OF BLACKS AND WHITES)?
¶ 11. Gavin argues that the venire, composed of twelve African Americans and nineteen Caucasians, did not reflect the *1077 racial makeup of Grenada County which he claims is 50% African American and 50% white. The actual panel was composed of eleven whites and one African American; thus, Gavin argues the trial court erred in failing to quash the jury panel.
¶ 12. While purposeful discrimination in the selection of a venire violates an accused's equal protection rights, "[t]here is no constitutional right to have a jury mirror any particular community." Carr v. State, 655 So.2d 824, 840 (Miss.1995). The Carr court found no error when venue in a capital murder case was changed from Quitman County, which was 50% non-white and 50% white, to Alcorn County, which was 90.3% white and 9.7% non-white. We can find no law that requires a venire or a petit jury to precisely reflect the racial composition of the county in which an accused is tried. Even if this was the law, Gavin offered no evidence of the racial composition of Grenada County. This assignment of error is without merit.

V. DID THE TRIAL COURT ERR WHEN IT DID NOT ALLOW THE DEFENSE TO QUESTION THE MOTHER OF THE VICTIM ABOUT BERNARD WILLIAMS AND HIS MOTHER OFFERING TO DROP THE CHARGES UPON PAYMENT OF $25,000?
¶ 13. Gavin wanted to call the victim's mother as a witness to question her about an alleged offer she made, in her son's presence, to drop the charges against Gavin in return for $25,000. The State moved in limine to exclude this testimony. The trial court surmised that the alleged offer could have been an offer to settle a possible civil lawsuit against Gavin. The trial court granted the State's motion in limine, finding that it did not bear on the criminal case brought by the State. Gavin claims this testimony is relevant because it shows that the victim's testimony was influenced by Gavin's rejection of the offer. Gavin claims his constitutional right to call witnesses on his behalf was violated.
Relevancy and admissibility of evidence are largely within the discretion of the trial court, and reversal may be had only where that discretion has been abused. Furthermore, the trial court's discretion must be exercised within the scope of the Mississippi Rules of Evidence, and reversal will be appropriate only when an abuse of discretion resulting in prejudice to the accused occurs.
White v. State, 742 So.2d 1126 (¶ 29) (Miss. 1999). M.R.E. 401 defines "relevant evidence" as that which has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Under this definition, the trial judge did not abuse his discretion in finding that the excluded testimony was irrelevant in a criminal aggravated assault prosecution.

VI. DID THE TRIAL COURT ERR IN FAILING TO GRANT A NEW TRIAL?
¶ 14. In Gavin's reply brief he urges that the cumulative effect of errors requires that he be granted a new trial. "Where there is `no reversible error in any part ... there is no reversible error to the whole.'" Wilburn v. State, 608 So.2d 702, 705 (Miss.1992) (quoting McFee v. State, 511 So.2d 130, 136 (Miss.1987)). Since the trial court committed no errors, this assignment of error is without merit.
¶ 15. THE JUDGMENT OF THE GRENADA COUNTY CIRCUIT COURT OF CONVICTION FOR AGGRAVATED ASSAULT AND SENTENCE OF TEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS HEREBY AFFIRMED. COSTS OF APPEAL ARE ASSESSED TO APPELLANT.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, IRVING, LEE, MYERS, PAYNE, AND THOMAS, JJ., CONCUR.
NOTES
[1] The State's comment that Mr. Bowdry was "shifty looking" standing alone would not survive a Batson challenge; however, the alternate reason given by the state, that Mr. Bowdry had been previously represented by Gavin's lawyer, is race neutral.