805 So.2d 592 (2001)
Charles ARMSTEAD, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2000-KA-01999-COA.
Court of Appeals of Mississippi.
November 20, 2001.
Rehearing Denied January 22, 2002.
*594 David L. Walker, Batesville, Attorney for Appellant.
Office of the Attorney General by Billy L. Gore, Jackson, Attorney for Appellee.
Before SOUTHWICK, P.J., IRVING, and MYERS, JJ.
SOUTHWICK, P.J., for the Court.
¶ 1. Charles Armstead was convicted by a jury of one count of aggravated assault. His appellate issues are that he was not allowed to cross-examine the victim about her alleged offer to drop the charges against him and that the State improperly cross-examined one of his witnesses concerning that person's prior aggravated assault conviction. Finding no basis for reversal in these allegations, we affirm.

STATEMENT OF FACTS
¶ 2. On the evening of November 3, 1999, four people were at a bar in Lambert, Mississippi. Among them were the victim in this case, Lavitrice Bell; the defendant's girlfriend, Nancy Harvey; and two others. Bell testified that the group left the bar and walked to where Harvey had parked her car. Armstead was waiting beside the car. Bell testified that Armstead appeared to want to fight with Harvey, that he would not let anyone get into Harvey's car, and that he pulled out a knife. No injuries were yet sustained.
¶ 3. Bell then went to her aunt's home. She said that the others from the bar, except for Armstead, were already there. They explained to the aunt what Armstead had done. Shortly thereafter, Armstead arrived. He wanted to speak with his girlfriend, Nancy Harvey. Harvey began to walk outside to talk with Armstead, and Bell followed and picked up a hot sauce bottle before she left the house. Bell testified that she picked up the bottle because she was aware that Armstead had earlier had a knife and was concerned that he might try to harm Harvey. The aunt also accompanied the women to the door.
¶ 4. Bell testified that Armstead swung at Harvey as soon as she walked outside. The aunt testified that Armstead swung at Nancy with a knife. Bell testified that she quickly placed herself between Armstead and Harvey and was cut by the knife. She then struck Armstead with the bottle several times. The aunt began hitting Armstead with a stick. Bell testified that she eventually took the stick and chased Armstead with it. Armstead retreated to his car and left the scene.
¶ 5. Armstead testified at trial that when his girlfriend came outside that she was angry with him and began hitting him in the chest. Armstead testified that she came outside alone, and that he did nothing in response. However, once Bell came out and began hitting him with a bottle, he tried to push Harvey out of the way in order to strike Bell. He was unsure whether he actually made contact. Armstead testified that Bell had pushed him back towards a van parked in the driveway and that while he had his back towards the van Bell continued to hit him with a stick. Armstead testified that he did not pull out his pocket knife until he started walking towards the street where his car was parked. He held the knife in his hand only to ward off Bell's blows, but did not recall cutting her.
¶ 6. Bell suffered cuts to her forehead, neck, and right forearm. The cuts were approximately one-half inch deep, one and one-half inches to three inches in length, and required stitches.
¶ 7. On September 13, 2000, Armstead was convicted of one count of aggravated assault after a two-day trial. He appeals.

*595 DISCUSSION

1. Statements Concerning Willingness to Drop Charges
¶ 8. Prior to trial, the State made a motion in limine to prevent defense counsel from questioning Bell about an alleged settlement offer she made to Armstead. The State said this:
Defense attorney has per telephone notified the State that he expects to cross-examine [Bell] on some possible settlement negotiations in this case. It is my understanding from the conversation with the defense attorney that he spoke with her and there was an attempt to get the charges dropped in this case. And also there was some type of statement from the victim on aeither payment of medical bills or a settlement amount to cover expenses, and I do not know the entire gist of the conversation.
¶ 9. Armstead's counsel said that Bell had made statements to several people that she would not pursue Armstead's prosecution if she was paid a certain sum of money. The money was not paid, and the attorney argued that the victim's willingness to drop the charges for money reflected bias or prejudice that would be proper to show on cross-examination of her and on direct examination of defense witnesses.
¶ 10. When asked by the court whether defense counsel initiated the conversation, defense counsel stated that "she walked up when I was talking with other witnesses. I did not make a direct contact to her." The trial court again asked whether Bell initiated the conversation to which defense counsel responded that "I don't really recall. There is a probability that I in fact initiated it...." There was some suggestion that the payment Bell may have been seeking was for her medical bills.
¶ 11. The circuit court initially stated that as far as introducing evidence of any settlement discussions between Bell and defense counsel that "under the rules, that is improper. You can't do that in a civil trial, and certainly you can't do it in a criminal trial." The final explanation for granting the motion in limine was this:
The Court finds that it is irrelevant to the issue of whether or not [Bell] was victimized by being cut and whether or notwell, if she were cut whether or not the defendant cut her. The Court finds that some subsequent discussion of the victim making an offer of settlement, that has nothing to do with whether or not she was victimized and whether she was victimized by the defendant. Also, I'm sure the evidence is not going to show that she was a willing victim, that she was willing to be cut in an effort to profit through some settlement. The evidence would not show that would it?
Defense counsel responded that it would not. The circuit court also stated that evidence of any offer of settlement "would be highly prejudicial, .., if that evidence were admitted."
¶ 12. Armstead argues that he should have been allowed to question Bell about the alleged statements so that he could show that Bell's testimony was influenced by his rejection of the offer and that Bell was also only pursuing charges against him in "retaliation" for his rejection of the offer.
¶ 13. Rule 401 of the Mississippi Rule of Evidence defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." M.R.E. 401. Rule 408 bars evidence of "offering or promising to accept a valuable consideration in compromising or attempting to *596 compromise a claim which was disputed...." M.R.E. 408. However, the "rule does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness...." Id.
¶ 14. A trial court may exercise its discretion when deciding upon the admissibility of evidence. Sturdivant v. State, 745 So.2d 240, 243 (Miss.1999). A reviewing court must "determine whether the trial court employed the proper legal standards in its fact findings governing evidence admissibility." Sturdivant, 745 So.2d at 243. "[T]he trial court's discretion must be exercised within the scope of the Mississippi Rules of Evidence and reversal will be appropriate only when an abuse of discretion resulting in prejudice to the accused occurs." Id.
¶ 15. On this issue, both Armstead and the State cite this Court's decision in Gavin v. State, 767 So.2d 1072 (Miss.Ct.App. 2000). In Gavin, the defendant was charged with aggravated assault. He wished to call the victim's mother as a witness to question her about an offer that she allegedly made to convince her son to drop all charges if they were paid $25,000. Gavin, 767 So.2d at 1077. The trial court held that the "offer could have been made to settle a possible civil lawsuit" and that the offer "did not bear on the criminal case brought by the State." Id. Gavin argued that the testimony was relevant to show prejudice or bias on the part of the victim and that his inability to call the victim's mother violated his constitutional right to call witnesses. Id. This Court held that the trial court was within its discretion in finding that the testimony was irrelevant. Id.
¶ 16. Based on the record before us, there is no clear evidence that Bell asked Armstead for a monetary settlement in exchange for withdrawing her charges against him. Armstead's counsel admitted that he may have initiated a conversation with Bell concerning the possibility of having the charges against his client dropped, though perhaps he meant he initiated it after hearing from others that Bell was already talking about the possibility. If she was discussing it with others, she never suggested it to Armstead's counsel until he asked her about the possibility.
¶ 17. If in fact Bell was discussing the possibility of seeking to drop all charges in return for money, Bell's unhappiness about being unsuccessful in that endeavor might have created some bias. If there were no other witnesses to the altercation, a willingness to be paid in return for not testifying might even allow suspicions that the victim had not been victimized at all. Those problems simply do not exist here. Bell's testimony as to the sequence of events were supported by the testimony of her aunt. The aunt testified that she saw a knife in Armstead's hand as soon as her daughter Nancy exited the home; Armstead began immediately slashing at Nancy's face. Indeed, all of the aunt's testimony was consistent with Bell's.
¶ 18. Whatever bias might be shown by these indications of interest by the victim in receiving some compensation from Armstead, we find that it was within the trial judge's discretion to refuse to permit this matter to be explored before the jury. There is broad discretion for the trial judge as to what is relevant. That discretion was properly exercised here because of the limited relevance of attacking the credibility of a witness whose testimony was cumulative to that of someone whose credibility was not subject to attack in any way shown at trial.
¶ 19. We note a point of disagreement, though, with the trial judge. He said that it would be "highly improper" to *597 determine at trial whether an offer such as this was made, and if it were, to permit the jury to learn about it. Evidentiary Rule 408 was relied upon by the court. It prevents evidence of settlement offers to be presented to the jury. The evidentiary rules are applicable to both civil and criminal cases. M.R.E. 101. However, some rules such as Rule 408 have more ready application to civil cases. Whether this was a "settlement offer" in the sense intended by the rule is unlikely, as it was not in the victim's power to settle Armstead's prosecution. Civil litigation provides its participants the opportunity to settle disputes short of trial. The central purpose of civil litigation is to resolve differences, which frequently can be compromised by the payment of money. A party's willingness either to offer or to receive a certain amount of money to end the litigation is to be encouraged, but such offers would instead be discouraged if proof of the willingness was admissible at a later trial when settlement discussions failed.
¶ 20. A criminal prosecution is entirely different. A prosecution is initiated by the State's decision that a suspect has violated a criminal statute and must be brought to account. An indictment indicates that a grand jury has agreed. Whether the accused might be willing to pay a sum of money to someone for the problem to go away is not what Rule 408 is addressing. A victim cannot "settle" a criminal prosecution, though her reluctance to testify can make the State's success more difficult.
¶ 21. The comment to Rule 408 implicitly recognizes the limits of its applicability to criminal cases. Evidence of settlement offers "is irrelevant, since the offer may be motivated by a desire for peace rather than by a recognition of liability," and "public policy favors the out-of-court compromises and settlement of disputes." M.R.E. 408 cmt. Public policy definitely does not favor out-of-court money settlement of criminal cases.
¶ 22. As the rule itself provides, the general prohibition against evidence of settlement offers still must give way to the relevance of proof of bias. M.R.E. 408. However, because the exclusion of the evidence did not prejudice Armstead, this assignment of error does not cause reversal.

2. Defense Witness's Prior Conviction
¶ 23. Prior to trial, Armstead made a motion in limine to prevent the State from questioning Renee Yancy about her recent conviction on a charge of aggravated assault. During argument on the motion before the trial court, Armstead stated that questioning Yancy about the conviction was prejudicial because it was the same crime for which Armstead was charged and also because aggravated assault did not touch upon the truth or veracity of the person so convicted. Defense counsel specifically referred to Rule of Evidence 609 and said that it required the judge to make a case-by-case determination of whether to admit the prior conviction. The trial judge responded that "you're saying I, therefore, have to weigh the probative value against the prejudicial...." Defense counsel completed the trial judge's sentence by stating "prejudicial value."
¶ 24. The court did not rule upon the motion at that time, but it later denied the motion stating only that "[t]he Court denies the motion in limine." Armstead now argues that this was error because there was no on-the-record determination that the probative value of admitting the evidence of Yancy's aggravated assault conviction outweighed any prejudicial effect.
¶ 25. Evidence of a prior conviction of a witness may be admitted to attack credibility if the crime involved a sentence in *598 excess of one year and the court "determines that the probative value of admitting this evidence outweighs its prejudicial effect on a party; regardless of the sentence, the impeachment is proper if the crime involved dishonesty or false statement...." M.R.E. 609(a).
¶ 26. This rule "requires the trial judge to make an on-the-record determination that the probative value of the prior conviction outweighs its prejudicial effect before admitting any evidence of a prior conviction." Peterson v. State, 518 So.2d 632, 636 (Miss.1987). The supreme court has recently held that it is no longer necessary that the prior conviction relate to the witness's "propensity for truthfulness." White v. State, 785 So.2d 1059, 1061 (Miss. 2001). This ruling allows us without much comment to reject Armstead's argument that an aggravated assault conviction does not touch upon truthfulness or veracity. Regardless of whether it does, that is not an issue.
¶ 27. After White, the issue for impeachment of a witness in a criminal trial is that the former crime be one "punishable by death or imprisonment in excess of one year ..., provided the court determines that the probative value of the evidence outweighs its prejudicial effect on a party." Id. Aggravated assault has such a sentence. The trial court must therefore determine that the probative value of admitting the evidence outweighs any prejudicial effect.
¶ 28. In some situations, an on-the-record balancing must be conducted. Peterson v. State, 518 So.2d 632, 636 (Miss. 1987). The trial court did not explain an explicit balancing. As the already-quoted exchange between defense counsel and the trial judge reveals, though, the judge referred to the need to balance the prejudicial effect against the probative value. We find that he implicitly performed the balancing. Regardless, an on-the-record balancing is unnecessary unless the person being impeached is the defendant. White, 785 So.2d at 1061 n. 2 ("the Peterson analysis is applicable to parties only."). Here, the witness was not the accused but was someone present at the time of the incident. Thus, the explicit on-the-record balancing was not needed.
¶ 29. We also find that the testimony of the impeached witness, Renee Yancy, was consistent with the stories of two other witnesses, Glenda Armstrong and Nancy Harvey. It was inconsistent with the victim Bell's testimony. Armstead was not prejudiced by the admission of Yancy's prior conviction since other witnesses confirmed her explanation. It is difficult to see how Yancy's testimony could be of much help to Armstead. Therefore we find that even without the recent White case and its clarification of the requirements for an on-the-record balancing prior to the use of prior convictions for impeachment, that the impeachment here at best was harmless error.
¶ 30. THE JUDGMENT OF THE CIRCUIT COURT OF QUITMAN COUNTY OF CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE OF EIGHT YEARS WITH FOUR YEARS SUSPENDED TO RUN CONSECUTIVELY TO ANY AND ALL SENTENCES PREVIOUSLY IMPOSED IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING, P.J., BRIDGES, THOMAS, LEE, IRVING, MYERS, CHANDLER and BRANTLEY, JJ., concur.