888 So.2d 1178 (2004)
Gerald CRIMM, Appellant
v.
STATE of Mississippi, Appellee.
No. 2003-KA-00185-COA.
Court of Appeals of Mississippi.
September 21, 2004.
Rehearing Denied December 14, 2004.
*1179 Edmund J. Phillips, attorney for appellant.
*1180 Office of the Attorney General by Charles W. Maris, attorney for appellee.
Before KING, C.J., LEE, P.J., and GRIFFIS, J.
KING, C.J., for the Court.
¶ 1. Gerald Crimm was convicted in the Circuit Court of Leake County of embezzlement. Crimm was sentenced to five years in the custody of the Mississippi Department of Corrections, with three years suspended and ordered to pay a fine of $1,500 plus restitution and court costs. Aggrieved by his conviction and sentence, Crimm appeals and states the following issues:
I. The Court erred in denying Appellant's Motion to Quash Indictment for lack of speedy trial.
II. The Court erred in failing to suppress Appellant's statement.
III. The Court erred in refusing Instruction D-7.
¶ 2. Finding no error, we affirm.

STATEMENT OF FACTS
¶ 3. On September 20, 2000, Steve Murray, the owner of the McDonald's restaurant in Carthage, received a call from The Bank of Carthage about an irregularity in a deposit dated September 11, but which had just been made that day. Coincidentally, when Murray received the call the McDonald's manager, Gerald Crimm, was in his office. Murray informed Crimm of the discrepancy, and instructed him to go to McDonald's and see what the problem was, and to then come back to his office. Crimm never returned. Murray called the restaurant and was informed that Crimm was not there. About twenty minutes later, the assistant manager, Keisha Ealy, came to Murray's office and had Crimm's keys to the restaurant. Ealy said that Crimm had borrowed her car to make a deposit. Crimm then called Ealy at McDonald's and stated that her car, with his keys to the restaurant on the front seat, was parked at the hardware store located behind the McDonald's. Ealy retrieved her car and drove straight to Murray's office. Crimm could not be located.
¶ 4. Mr. and Mrs. Murray and Ealy drove to McDonald's. Upon arriving there, Murray attempted unsuccessfully to open the inner safe with his key. There were three keys to the safe, Murray had one and Crimm had the two remaining keys. Murray was able to open the safe using one of Crimm's keys. Upon doing so, he discovered some forty to fifty Ziploc bags full of money, each of which was missing the deposit slip.
¶ 5. At the end of every shift at McDonald's, the company policy was to count out the register, print out the total for that drawer, and if it balanced, the manager and the cashier signed the deposit slip and put the slip and the money in a Ziploc bag. This was done a minimum of four and maximum of twelve times per day. The money was then dropped into the inner safe through an envelope slot. At the end of the day, the store manager was to wrap up the deposit for that day and either deposit it that night or the next morning. A copy of the deposit slip for the bank was faxed to Murray's office on a daily basis by the store manager. Murray had received a fax everyday up until September 20, 2000, indicating that day's bank deposit.
¶ 6. After opening the safe, Murray, his wife, and Ealy began to count the money to see how much was there. Murray was able to ascertain from bank records that no deposits were made on September 15, 16, 17, although his office had been faxed deposits slips indicating deposits for those days. It was determined that part of the September 16 deposit and all of the September *1181 17 deposit totaling approximately $3,000 was missing from the safe.
¶ 7. Murray attempted to locate Crimm at his home and by phone without success. Murray then reported the matter to the Carthage Police Department. While Murray was at the police station Crimm called him on his cellular phone. Murray told Crimm that he needed to come down to the station. After Crimm arrived at the station, Officer Kevin Cross of the Carthage Police Department explained to Crimm that Murray had discovered money missing from the safe at McDonald's. Officer Cross then informed Crimm of his Miranda rights, after which Crimm signed a waiver of rights form. Crimm asked to speak with Murray, and was allowed to do so in the presence of Officer Cross. Crimm told Murray that he did not know what was going on, but he wanted to pay the money back because he knew that as a manager it was his responsibility.
¶ 8. Office Cross testified that Crimm was arrested on September 21, 2000, posted bail and was released that day. After his release, Crimm asked Murray to keep his last paycheck in partial repayment of the missing money. Upon the advice of his attorney, Murray declined to accept the paycheck as a partial repayment.
¶ 9. Crimm's attorney and Murray's attorney had several discussions regarding Crimm making restitution, and Murray was assured that Crimm would comply. After three or four months, with no attempt at repayment by Crimm, the attorneys met again to discuss the case. By this time the January 2001 grand jury was about to convene. The attorneys made an agreement that if Crimm repaid the money, Murray would not file charges against Crimm. The district attorney's office was notified that Murray and Crimm had settled the matter, and that no charges would be filed by Murray. Crimm still made no attempt to pay Murray, and after deciding he could wait no longer Murray filed charges against Crimm. Having waited through the May 2001 grand jury term, Murray appeared before the next grand jury in August 2001, but the grand jury continued the case for further investigation. The case was to be presented to the May 2002 grand jury. However, Crimm was scheduled to appear before this grand jury in an unrelated case in which he was the victim. The prosecutor elected to wait to present the case until the August 2002 grand jury, where an indictment was returned against Crimm.
¶ 10. On September 5, 2002, Crimm, through his retained counsel, filed a motion to quash the indictment for lack of speedy trial. This motion was denied. Crimm also requested a continuance due to the "complicated nature of the case," which was granted. On January 17, 2003, Crimm's trial began, and on that same day he was convicted by a jury of the crime of embezzlement. Crimm was sentenced to five years in the custody of the Mississippi Department of Corrections, with three years suspended, five years of probation, and ordered to pay a fine of $1,500, restitution to Murray in the amount of $3,300 and court costs. From this conviction and sentence Crimm appeals.

ISSUES AND ANALYSIS

I.

The Court erred in denying Appellant's Motion to Quash Indictment for lack of speedy trial.
¶ 11. Crimm contends that the trial court erred in denying his motion to quash indictment, and the verdict should be overturned because his right to a speedy trial was violated by the State's failure to indict for approximately twenty-three months. Crimm admits that he did *1182 not assert his right to a speedy trial, but contends that he could not do so because he was not yet indicted.
¶ 12. The right of a defendant in a criminal case to a speedy trial is guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and by Article 3, § 26 of the Mississippi Constitution of 1890. "The supreme court has held that the right to a speedy trial under the United States Constitution attaches immediately upon the defendant's arrest." Elder v. State, 750 So.2d 540, 545 (¶ 10) (Miss.Ct.App.1999), citing Box v. State, 610 So.2d 1148, 1150 (Miss.1992). "When a defendant's constitutional right to a speedy trial is at issue, the balancing test set out in Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), is applicable." Noe v. State, 616 So.2d 298, 300 (Miss.1993). Speedy trial issues are analyzed by applying the four factors detailed in Barker which include (1) the length of the delay; (2) the reason for the delay; (3) whether the defendant asserted his right to a speedy trial; and (4) whether the defendant was prejudiced by the delay. Skaggs v. State, 676 So.2d 897, 900 (Miss.1996). No single factor controls. Id. Furthermore, the court is not strictly limited to consideration of the Barker factors. State v. Magnusen, 646 So.2d 1275, 1278 (Miss.1994). "Alleged violations of the right to a speedy trial are decided on a case by case basis, weighing the facts and circumstances and the conduct of the prosecution and the defense." Elder v. State 750 So.2d 540, 542(¶ 7) (Miss.Ct.App.1999). To determine whether Crimm's rights were violated, this Court examines the Barker factors within the context of this case.

A. Length of Delay
¶ 13. The court has held that after the defendant's arrest, a delay of more than eight months before trial is presumptively prejudicial to the defendant, and violative of his right to a speedy trial. Id. This presumption can be rebutted by balancing the remaining Barker factors. Handley v. State, 574 So.2d 671, 676 (Miss.1990).
¶ 14. To place this issue into perspective, this Court sets out the following chronology of events beginning with the date of the criminal activity, and ending with Crimm's trial and subsequent conviction.

 September 20, 2000 $3,000 discovered missing from McDonald's
 September 21, 2000 Crimm arrested and initial appearance on charge of
 embezzlement
 August 29, 2002 Indicted on the charge of embezzlement
 September 5, 2002 Motion to quash indictment and motion for continuance
 January 17, 2003 Convicted of embezzlement

While the date of Crimm's arrest was not specifically identified, based on the testimony of Officer Cross, who relied on the report he made the day Murray reported the missing money, Crimm was arrested on September 21, 2000. However, Crimm was not tried for the offense until January 17, 2003. As 847 days, approximately twenty eight months, elapsed between the arrest and the trial, the delay in the present case is presumptively prejudicial and triggers consideration of the other Barker factors.

B. Reason for Delay
¶ 15. Crimm contends that only a small part of the delay can be attributable to his actions.
¶ 16. The State bears the responsibility for bringing a defendant to a *1183 speedy trial. Turner v. State, 383 So.2d 489, 491 (Miss.1980). The State asserts that the reason for the delay in indicting Crimm was due to Crimm's failure to pay restitution to Murray.
¶ 17. The record indicates that the parties attempted to negotiate restitution. However, despite having made an agreement with Murray to make restitution, Crimm failed to do so. After three to four months, and no attempt at repayment by Crimm, Murray's attorney contacted Crimm's attorney to inquire about the status of the restitution. Around January 2001, the attorneys agreed on the arrangement that no charges would be pursued, if Crimm would repay the money. The district attorney's office was notified that the matter had been settled, and the file was closed. Crimm still made no attempt at repayment, and after waiting through the May 2001 grand jury term, Murray decided to file charges against Crimm. The case was then presented to the grand jury in August 2001, which continued the case for further investigation. The case was to be presented again at the May 2002 grand jury; however, Crimm was scheduled to appear as a witness in an unrelated case as a victim. The prosecutor decided to present the case to the August 2002 grand jury, which on August 29, 2002, indicted Crimm. Crimm's motion to quash was denied on September 5, 2002. His attorney was granted a continuance until the next term of the circuit court in January 2003.
¶ 18. We have held that plea negotiations undertaken and acquiesced to by the defendant are just cause for delay, and are at most a neutral factor in the Barker analysis. See Anthony v. State, 843 So.2d 51, 54 (¶ 10) (Miss.Ct.App.2001). Also, "[t]ime associated with an earnest attempt at plea negotiations will not be charged against the State." Wesley v. State, 872 So.2d 763, 767(16) (Miss.Ct.App.2004). By falsely agreeing to repay Murray, Crimm avoided Murray pursuing an indictment against him, and thus the delay until August 2001 is a neutral factor.
¶ 19. When the case was first presented to the grand jury in August 2001 an indictment was not returned due to the need for further investigation. Embezzlement is a crime that is often very difficult to prove and requires thorough investigation. The delay from August 2001 to May 2002 can be attributed to the State. The supreme court has previously held that delays attributable to the complex nature of the case, such as a conspiracy charge, are justifiable delays. See Hurns v. State, 616 So.2d 313, 318 (Miss.1993).
¶ 20. The case was then set to be presented to the May 2003 grand jury, but the prosecutor chose to move the case to the August 2003 grand jury, since Crimm was scheduled to appear as a witness in an unrelated case. This was a reasonable and justifiable choice of delay by the prosecutor, and therefore, this delay is not attributed to either party.
¶ 21. Both the State and Crimm have some responsibility for the twenty-three month delay.

C. Defendant's assertion of his right to a speedy trial
¶ 22. In the two intervening years between his arrest on September 21, 2000, and the hearing on the motion to quash on September 5, 2002, Crimm never demanded a speedy trial. A motion to quash is not the same as a demand for a speedy trial. See Moore v. State, 837 So.2d 794, 798 (¶ 10) (Miss.Ct.App.2003). Crimm contends that he could not assert his right to a speedy trial because he was not yet indicted. However, what Crimm failed to acknowledge is that he delayed the indictment *1184 from September 2000 until August 2002 by promising restitution to Murray.
¶ 23. "Although it is the State's duty to insure that the defendant receives a speedy trial, a defendant has some responsibility to assert this right." Smith v. State, 812 So.2d 1045 (¶ 11) (Miss.Ct.App.2001) (citation omitted).
¶ 24. Since Crimm did not diligently pursue a speedy trial, this factor must weigh against him.

D. Prejudice to the defendant
¶ 25. "The supreme court has held that prejudice is assessed in the speedy trial context (1) to protect against oppressive pretrial incarceration, (2) for the minimization of anxiety and concern of the accused, and (3) for the limitation of the possibility of impairment of the defense." Elder, 750 So.2d at 545 (¶ 19). "The possibility of impairment of the defense is the most serious consideration in determining whether the defendant has suffered prejudices as a result of delay." Sharp v. State, 786 So.2d 372, 381 (¶ 19) (Miss.2001).
¶ 26. A two-prong test has been established to determine if a defendant's constitutional right to a speedy trial has been violated by the State's failure to expeditiously indict. Hooker v. State, 516 So.2d 1349, 1351 (Miss.1987). Under the Hooker test Crimm has the burden to show that (1) the pre-indictment delay caused actual prejudice and (2) such delay was intentional by the State to gain a tactical advantage. Id.
¶ 27. Crimm has not carried his burden of proof on the question of prejudice. Crimm has failed to show any prejudice which may have resulted from the failure to obtain an indictment prior to August 2002. Accordingly, this Court finds no merit to this issue.

II.

The Court erred in failing to suppress Appellant's statement.
¶ 28. Crimm contends that the trial court erred in overruling his motion to suppress the statement he made at the police station on September 20, 2000. Crimm argues that the admission of the statement constitutes a violation of Mississippi Rule of Evidence 408, which is entitled "Compromise and offers to compromise," and states:
Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations. This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.
The comment to Rule 408 states it "only excludes offers when the purpose is proving the validity or invalidity of the claim or amount. Therefore, an offer for another purpose may well be admissible at trial." M.R.E. 408.
¶ 29. The issue of Crimm's statement arose during Murray's testimony on direct examination. Murray testified that Crimm called his cellular phone while he was at the police station talking with Officer Cross about the missing money. Murray *1185 asked Crimm to meet him there, and Crimm complied. The prosecutor then asked Murray what happened when Crimm arrived at the station, to which Crimm objected. The trial judge sustained the objection and the jury was excused. Murray continued his testimony which indicated that after Officer Cross gave Miranda warnings to Crimm he signed a waiver of rights form, and asked to speak to Murray, and Officer Cross allowed him to do so, but remained in the room. Both Murray and Crimm testified to what he understood Crimm to say when Murray came into the room. Murray testified that when he spoke with Crimm he stated, "I don't know what's going on here, but I want to pay this money back." With the jury still excused, Officer Cross testified that when Murray arrived in the room Crimm stated, "he did not take the money, but he told me that he knew he was the store manager, that he was ultimately responsible for the money, and he would be willing to pay it back."
¶ 30. "The standard of review of an admission or exclusion of evidence is abuse of discretion." Smith v. State, 839 So.2d 489, 496 (¶ 17) (Miss.2003), citing Stallworth v. State, 797 So.2d 905, 908(¶ 8) (Miss.2001).
¶ 31. Some rules of evidence, such as Rule 408, are more applicable to civil, rather then criminal cases. Settlements are strongly encouraged in civil cases, but in criminal prosecutions it is the State's decision, not the victim's choice, on whether to bring a defendant before a grand jury for indictment. The comment to Rule 408 states that "public policy favors the out-of-court compromises and settlement of disputes." M.R.E. 408 cmt. "Public policy definitely does not favor out-of-court money settlement of criminal cases." Armstead v. State, 805 So.2d 592, 597 (¶ 21) (Miss.Ct.App.2001). Whether Crimm's statement at the police station was a "settlement offer" as intended by Rule 408, and therefore inadmissible, is unlikely because a victim in a criminal case has no power to settle the defendant's prosecution. See Id. at 597 (¶¶ 19-22).
¶ 32. However, Mississippi Rules of Evidence Rule 101 clearly states that the Rules are applicable to both civil and criminal cases. M.R.E. 101. As previously mentioned, the comment to Rule 408 also states that "[e]vidence of an offer to compromise a claim is not receivable in evidence as an admission of either the validity or the invalidity of the claim." Rule 408 cmt. In a criminal prosecution the claim is the charge brought, and therefore evidence of the offer to compromise it is not admissible to prove the validity or invalidity of a claim. After a review of the record, we see no reason for the abovementioned testimony of Officer Cross and Murray to be offered other than to prove the validity of the charges brought; therefore, it was error for the trial judge to admit the testimony. However, we find such error harmless in light of the existence of the overwhelming evidence of Crimm's guilt, set forth as follows: (1) Crimm was in possession of the only two keys that opened the inner safe where the money was found to be missing; (2) Crimm was the only person working at McDonald's that made the daily deposits; (3) according to bank records, the deposit slips that Crimm faxed to Murray were dummy slips as the money was not actually deposited on the day indicated on the slip; (4) the bags found in the inner safe were missing deposit slips; and (5) Murray testified that the missing deposit slips, identical to the ones faxed to his office, for the 15, 16, 17, of September, were found in Crimm's briefcase. Even if the trial judge had not admitted the testimony regarding Crimm's statements at the police station, there was substantial evidence with which *1186 to convict Crimm and, accordingly, we find this error to be harmless. There is no merit to this issue.

III.

The Court erred in refusing Instruction D-7.
¶ 33. Crimm contends that the trial court erred in refusing to grant his proposed jury instruction D-7 which read as follows:
The Court instructs the jury that even should the jury believe from the evidence that money was converted or stolen, nevertheless, if the jury further believes from the evidence that others beside the Defendant had access to the money, the jury should return a verdict of not guilty, unless they are satisfied from the evidence beyond a reasonable doubt and to the exclusion of every reasonable hypothesis consistent with innocence that the Defendant, and no other person, so converted the money.
Since the trial court ruled that this case was a circumstantial evidence case, Crimm contends that he was entitled to instruction D-7 because it was a two-theory instruction which is a proper instruction in a circumstantial evidence case.
¶ 34. "Our standard of reviewing a judge's decision concerning jury instructions is as follows: In determining whether error lies in the granting or refusal of various instructions, the instructions actually given must be read as a whole. When so read, if the instructions fairly announce the law of the case and create no injustice, no reversible error will be found." Conners v. State, 822 So.2d 290, 292(¶ 5) (Miss. Ct App.2001) (internal citations omitted). "Defendants are entitled to instructions which support their theory of the case." Murphy v. State, 566 So.2d 1201, 1206 (Miss.1990).
¶ 35. The trial judge refused instruction D-7 because it was an improper comment on the evidence. "It is also well established that instructions to the jury should not single out or contain comments on specific evidence." Lester v. State, 744 So.2d 757, 759(¶ 6) (Miss.1999). The trial court did grant a two-theory instruction, instruction D-6, which reads as follows:
The Court instructs the jury that if there be any factor [sic] circumstances in this case susceptible to two reasonable interpretations, one favorable and the other unfavorable to the Defendant, and when the jurors have considered such factor [sic] circumstances with all the other evidence, there is reasonable doubt as to the correct interpretation, the jury must resolve such doubt in favor of the Defendant, and place upon such fact or circumstances the interpretation favorable to the Defendant.
Accordingly, we find that the trial court did not abuse its discretion in refusing to grant an instruction that improperly commented on the evidence and was duplicative.
¶ 36. THE JUDGMENT OF THE CIRCUIT COURT OF LEAKE COUNTY OF CONVICTION OF EMBEZZLEMENT AND SENTENCE OF FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH THREE YEARS SUSPENDED AND FIVE YEARS OF PROBATION, RESTITUTION OF $3,300 AND FINE OF $1,500, IS HEREBY AFFIRMED. ALL COSTS OF THIS APPEAL ARE TAXED TO LEAKE COUNTY.
BRIDGES AND LEE, P.JJ., MYERS, CHANDLER, GRIFFIS, AND BARNES JJ., CONCUR. IRVING, J., CONCURS IN RESULT ONLY.